ELECTRONICALLY FILED
Craighead County Circuit Court in Jonesboro
Candace Edwards, Craighead Circuit Clerk
2019-May-24  16:30:42
16JCV-19-546
C02D09 : 19 Pages

# IN THE CIRCUIT COURT OF CRAIGHEAD COUNTY, ARKANSAS

**ASHLEY KIRBY**                                                      **PLAINTIFF**

**v.**                            **CASE NO. _____**

**SAFECO INSURANCE COMPANY OF ILLINOIS**            **DEFENDANT**

## CLASS ACTION COMPLAINT

### I. INTRODUCTION

1.      Ashley Kirby insured her 2000 Buick Century with Safeco Insurance Company of Illinois ("Safeco"). Kirby was involved in a vehicle collision, and Safeco declared the vehicle a total loss. As it does with all its total loss claims, Safeco used a CCC One Market Valuation Report ("CCC One Report") to determine the actual cash value. Based on the report, Safeco valued the actual cash value or replacement cost of the vehicle at $1,543.00. This is less than the actual cash value of the vehicle and less than what was required to replace his vehicle with another of like kind and quality.

2.     Safeco's use of the CCC One Report to value total loss claims violates its contracts with its insureds and Arkansas law. Safeco is required to calculate actual cash value through either: (a) the cost of a specific, comparable replacement automobile, or (b) using one of two or more quotations obtained from two or more qualified dealers or appraisal services located within the local market area. Instead of following Arkansas law, Safeco uses the CCC One Report to cheat its policyholders and increase its profits. The CCC One Report systematically undervalues the insured's vehicles, resulting in a payment of less than the actual cash value for all total loss claims, saving Safeco millions of dollars each year at the expense of its insureds.

3.     Kirby brings this suit on behalf of herself and others similarly situated to recover the difference between the actual cash value of her vehicle and what she was paid, punitive damages, costs, and attorneys' fees. Plaintiff also asks the Court to declare that the use of the CCC One Report to adjust first-party insurance claims violates Arkansas law and to permanently enjoin its use.

## II. PARTIES, JURISDICTION, AND VENUE

4.      Plaintiff Ashley Kirby is a resident and citizen of Craighead County, Arkansas. At all times relevant to this Complaint, she had a motor vehicle insurance policy with Safeco Insurance Company of Illinois.

5.      Defendant Safeco Insurance Company of Illinois is incorporated and has its principal place of business in Illinois. It is licensed to do business in Arkansas, and its registered agent for service is The Corporation Service Company, 300 Spring Building, Suite 900, 300 S. Spring St., Little Rock, Arkansas 72201.

6.      This Court has subject matter jurisdiction pursuant to Ark. Const. amend. 80, § 6 and Ark. Code Ann. § 16-13-201.

7.      Venue is proper in this Court because Plaintiff resided in Craighead County at the time of the events which gave rise to this cause of action, and the accident occurred in Craighead County. Ark. Code Ann. § 16-60-101.

## III. FACTUAL ALLEGATIONS

8.      Kirby was involved in a motor vehicle accident in February 2018, which resulted in substantial damage to her 2000 Buick Century. Kirby insured her vehicle with Defendant Safeco Insurance Company of Illinoi,

Page **3** of **19**

and she filed a claim regarding her property damage claim. Safeco determined that the vehicle was a total loss.

9.    Kirby's insurance policy with Safeco contained a clause providing for the adjustment and settlement of total loss claims based on actual cash value or replacement with another of like kind or quality. *See* Safeco Insurance Policy, Exhibit "A" at p. 23. Upon information and belief, this is Safeco's standard automobile insurance policy issued to insureds in the state of Arkansas.

10.    The policy attached as Exhibit A is Kirby's most recent policy with Safeco. Although it is not the policy in place at the time motor vehicle accident, it is essentially the same as the policy that applied to her claim. Kirby has currently been unable to locate a copy of the policy in effect at the time of her loss to attach to this complaint, and Safeco did not respond to her request for a copy of her policy. Good cause exists for Kirby not to attach a copy to her complaint because Defendant has a copy of the policy, and she can obtain a copy in discovery.

11.    To adjust Kirby's claim, Safeco used a report from a third-party corporation, CCC Information Services, Inc. The report is known as the CCC One Report. The CCC One Report is sold almost exclusively to insurance

companies, and it is marketed as reducing the cost of total value settlements. Upon information and belief, Safeco uses the CCC One Report to calculate its offers of all total loss claims.

12.     Safeco presented the CCC One Report to Kirby as representing the actual cash value of the vehicle, and, based on the CCC One Report, Safeco paid $1,543.00 to adjust Kirby's claim. *See* CCC One Report, attached as Exhibit "B."

13.     The CCC One Report systematically undervalues vehicles by making a series of arbitrary and unexplained adjustments to the vehicles contained in the report. For instance, the CCC One Report bases its estimate on vehicles listed for sale in Lee Summit, Missouri, Bristol, Tennessee, and Grimes, Iowa, all more than 295 miles from Kirby's home in Jonesboro, Arkansas.

14.     The CCC One Report automatically discounts a certain amount from the list value of vehicles it uses for comparison for "condition." For example, the value of all three vehicles listed in the report were adjusted $463.00 for "condition." Neither Safeco nor the report explain the amount discounted or how that amount was determined. However, this serves to immediately lower the cash price paid to covered parties.

Page **5** of **19**

15.    The CCC One Report makes other adjustments to the vehicles used for comparison for mileage and options, but the report does not explain how or why those adjustments are made.

16.    The effect of these adjustments is to reduce the payment on the claim to an amount less than the actual cash value and far less than is required to purchase a replacement vehicle of like kind and quality.

17.    Safeco knows that the CCC One Report undervalues vehicles. Despite knowing that the CCC One Report undervalues vehicles, Safeco continues to use it to determine the amount to pay claimants.

18.    Arkansas law requires that Safeco, when adjusting or settling first party automobile total losses, either provide a replacement vehicle, provide a cash settlement based on a specific replacement vehicle if one is available in the local market area, or use "one (1) of two (2) or more quotations obtained by the insurer from two (2) or more qualified dealers or appraisal services located within the local market area when a comparable automobile is not located in the local market area." Ark. Ins. Regulation 43, § 10(a)(2). If the insurer deviates from one of those methods, the deviation must be supported by documentation giving particulars of the automobiles condition, and "[a]ny deductions from such cost, including deduction for

salvage, must be measurable, discernable, itemized, and specified as to dollar amount and shall be appropriate in amount." Ark. Ins. R. 43, § 10(a)(3). Further, "[t]he basis for such settlement shall be fully explained to the first party claimant." Ark. Ins. R. 43, § 10(a)(3).

19.    CCC Information Services, Inc. is not a qualified dealer or appraisal service located in Craighead County, Arkansas. While CCC Information Services, Inc. is registered with the Arkansas Secretary of State to do business in Arkansas, it does not maintain any offices in the state of Arkansas.

20.    Safeco did not provide documentation about why it needed to deviate from one of the two approved methods for Kirby's vehicle, and there was nothing unique about Kirby's vehicle that would justify deviating from the methods approved under Arkansas law.

21.    Safeco knows or should know that using the CCC One Report to determine actual cash value violates Arkansas law. Despite knowing that the practice is unlawful, Safeco uses the practices because it saves Safeco millions of dollars. Safeco can achieve this savings because the cost of obtaining an appraisal and litigating the value of a property damage claim

exceeds the difference in value between the CCC One Report and the actual cash value of the vehicle.

## IV. CLASS ACTION ALLEGATIONS

22. Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

23. Plaintiff brings this as a class action under Rule 23 of the *Arkansas Rules of Civil Procedure*.

24. Members of the putative class are so numerous that joinder of all such members is impracticable. The exact size of the putative class is unknown, but may be easily determined from records maintained by Safeco.

25. There are common questions of law and fact applicable to the putative class with respect to liability, relief, and anticipated affirmative defenses. Common questions of law and fact include:

a. Whether Safeco has a practice of using the CCC One Report to determine actual cash value;

b. Whether Regulation § 43, § 10 is incorporated into the terms of Safeco's automobile insurance policies;

c. Whether Safeco's practices violated Regulation 43, § 10;

d.   Whether CCC Information Services, Inc. is a qualified dealer or appraiser in the local market area; and

e.   By what percentage does the CCC One Report undervalue cars vis a vis their actual cash value.

26.   Kirby's claims are typical of the putative class. Like all other putative class members, Kirby had a total loss automobile claim that was settled and adjusted using the CCC One Report.

27.   Kirby will fairly and adequately protect the interest of the putative class. She has no conflicts with putative class members and has suffered the same injury as members of the putative class.

28.   Kirby's counsel possesses the requisite resources and experience in class action litigation to adequately represent Plaintiffs in prosecuting the claims here.

29.   The questions of law and fact common to Plaintiff and members of the putative class predominate over any question affecting only individual class members. These common questions concerning Safeco's wrongdoing must be resolved for all class members.

30.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Safeco engages in a common

business practice of using the CCC One Report to adjust total loss claims, which is alleged to violate Arkansas law, and it is not unfair to require Safeco to litigate its business practice on a class-wide basis. Moreover, class members' individual damage claims are too small to make individual litigation an economically viable alternative. But despite the small size of any one individual's claims standing alone, the aggregate value of the practice is substantial.

31.    Kirby's class claims are appropriate to proceed under the Arkansas Deceptive Trade Practices Act. Act 986 of 2017 – which purports to prohibit most private class actions under the ADTPA – is an unconstitutional intrusion into the Arkansas Supreme Court's exclusive authority to "prescribe the rules of pleading, practice and procedure for all courts." Ark. Const. Amend. 80, § 3; *see also Johnson v. Rockwell Automation,* 2009 Ark. 241, 308 S.W.3d 135 (holding two provisions of Arkansas Civil Justice Reform Act were unconstitutional); *Summerville v. Thrower,* 369 Ark. 231, 253 S.W.3d 415 (2007) (holding statute requiring reasonable cause affidavit was unconstitutional); *Weidrick v. Arnold,* 310 Ark. 138, 835 S.W.2d 843 (1992) (holding statute requiring 60-day notice before filing medical malpractice claim was unconstitutional).

## V. Causes of Action
### Count I: Arkansas Deceptive Trade Practices Act

32.     Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

33.     Arkansas law requires that an insurer settle total loss automobile claims by providing the insured with enough money to purchase a specific comparable replacement vehicle in the local market area, or, if no comparable vehicle is available, using one of two or more quotations from a local dealer or appraiser. Ark. Ins. R. 43, § 10.

34.     Safeco adjusts total loss automobile claims by relying on the CCC One Report, even though CCC Information Services, Inc. is not a local dealer or appraiser and even though the report does not provide the insured with sufficient funds to purchase a comparable replacement automobile in the market area.

35.     Safeco engaged in an unconscionable, false, or deceptive act or practice in business, commerce, or trade when it used the CCC One Report to adjust Plaintiff's total loss claim. Safeco also used the same unconscionable, false, or deceptive act or practice in using the CCC One Report to adjust all of its total loss claims in Arkansas. *See* Ark. Code Ann. §

4-88-107(a)(10). *See also* Ark. Inc. R. 43, § 1 (expressly providing that violations of the Insurance Department's regulations regarding unfair claims settlement practices "constitute an unfair or deceptive act or practice in the business of insurance.").

36.    Plaintiff and putative class members justifiably relied on Safeco's representation about the actual cash value of the vehicle.

37.    Defendant's conduct proximately caused damage to Plaintiff and putative class members. Plaintiff and putative class members seek compensatory damages in an amount equal to the difference between the amount paid to them to adjust total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

38.    Safeco knew or ought to have known that their conduct would result in injury to Plaintiff and putative class members and it continued in such conduct in reckless disregard of the consequences. As a result, Plaintiff and putative class members are entitled to punitive damages.

39.    Plaintiff and the putative class members are entitled to an award of attorneys' fees, costs, and expenses in bringing their Deceptive Trade Practices Act claim.

## COUNT II: FRAUD IN THE INDUCEMENT

40.     Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

41.     Safeco falsely represented that the amount in the CCC One Report represented the actual cash value of Kirby's automobile. Safeco made the same false representation to every other putative class member.

42.     Safeco knew that its representation was false. First, Safeco knew that Arkansas law requires that an insurer use one of the methods identified in Regulation 43 to determine actual cash value and that the CCC One Report was not a permissible method. Further, Safeco knew that the CCC One Report systematically generated valuations that were lower than the actual cash value that would have resulted had it obtained a valuation from a qualified local dealer or appraiser as required by Arkansas law.

43.     Safeco intended to induce and coerce Plaintiff and putative class members into settling their total loss claims for less than they would have if Safeco had complied with Arkansas law and obtained a quotation from a qualified dealer or appraiser located in the local market area.

44.     Plaintiff and putative class members justifiably relied on Safeco's representation about the actual cash value. Indeed, because the

Page **13** of **19**

misrepresentation goes to a material matter, reliance is presumed. *Manhattan Credit Co. v. Burns*, 230 Ark. 418, 323 S.W.2d 206 (1959) ("[R]eliance is to be presumed when, as here, the misrepresentation goes to a material matter."); *Pickering v. Garrison*, 2009 Ark. App. 107, at *13 ("Reliance is presumed when the misrepresentation goes to a material matter.").

45.     Safeco's conduct proximately caused damages. Plaintiff and putative class members suffered damages in an amount equal to the difference between the amount paid to them to adjust their total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

46.     Defendant knew or ought to have known that its conduct would result in injury to Plaintiff and putative class members and it continued in such conduct in reckless disregard of the consequences. As a result, Plaintiff and putative class members are entitled to punitive damages.

### COUNT III: BAD FAITH

47.     Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

48.     Safeco acted in bad faith to avoid liability under its policy issued to Kirby. Safeco knew that its method of settling total loss claims violated

Page **14** of **19**

Arkansas law and would result in a lower payment to Kirby than if Safeco would have obtained a quotation from a qualified local dealer or appraiser. Despite this knowledge, Safeco fraudulently presented the CCC One Report to Kirby as representing the actual cash value of her vehicle.

49.   Safeco did more than merely refuse to pay a claim. Safeco intentionally violated Arkansas law to save itself money at the expense of its insured. Safeco's conduct was dishonest and oppressive, and was carried out with a state of mind characterized by contempt for its insureds.

50.   Safeco's conduct proximately caused damages. Plaintiff and putative class members suffered damages in an amount equal to the difference between the amount paid to them to adjust total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

51.   Defendant knew or ought to have known its their conduct would result in injury to Plaintiff and putative class members and it continued in such conduct in reckless disregard of the consequences. As a result, Plaintiff and putative class members are entitled to punitive damages.

### COUNT IV: BREACH OF CONTRACT

52.   Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

53.    Kirby and Safeco entered into a contract. Among other things, the policy provides for the adjustment and settlement of total losses based on actual cash value or replacement with another of like kind or quality.

54.    Arkansas law requires that Safeco either provide a replacement vehicle, provide a cash settlement based on a specific replacement vehicle if one is available in the local market area, or use "one (1) of two (2) or more quotations obtained by the insurer from two (2) or more qualified dealers or appraisal services located within the local market area when a comparable automobile is located in the local market area." Ark. Ins. Regulation 43, § 10(a)(2). If the insurer deviates from this method, it must provide documentation for the deviation, including giving particulars of the automobiles condition, and "[a]ny deductions from such cost, including deduction for salvage, must be measurable, discernable, itemized, and specified as to dollar amount and shall be appropriate in amount." Ark. Ins. R. 43, § 10(a)(3). Further, "[t]he basis for such settlement shall be fully explained to the first party claimant." Ark. Ins. R. 43, § 10(a)(3). The provisions of Ark. Ins. R. 43 are incorporated into the insurance contract as a matter of law. *See First Sec. Bank v. John Doe 1, 2, & 3*, 297 Ark. 254, 257, 760 S.W.2d 863, 865 (1988).

55.    Kirby and putative class members did what the contract required of them.

56.    Safeco breached the contracts by using the CCC One Report instead of using the methods required by Arkansas law.

57.    As a result of Safeco's breach of contract, Plaintiff and putative class members suffered damages in an amount equal to the difference between the amount paid to them to adjust total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

## VI. JURY DEMAND & PRAYER FOR RELIEF

58.    Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

59.    Article 2, § 7 of the Arkansas Constitution provides that "The right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy[.]" Further, Article 2, § 13 also guarantees every person a "remedy in the laws for all injuries or wrongs . . .." Plaintiff demands a remedy in the laws for all injuries and wrongs alleged, and a trial by jury on all issues so triable.

60.    WHEREFORE, Plaintiff respectfully requests this Court:

a.    Certify a class defined as:

> All individuals insured by Safeco under a policy
> issued or effective in Arkansas who: (a) had a
> total loss claim with Safeco; (b) that received a
> settlement calculated using CCC One Report; (c)
> during the period from May 24, 2014 to the
> present.

b.    Appoint Ashley Kirby as class representative;

c.    Appoint Holleman & Associates, P.A. and Brad Hendricks

Law Firm as class counsel;

d.    Declare that Safeco's practice of using the CCC One Report

to adjust total loss claims violates Arkansas law;

e.    Enjoin Safeco from using the CCC One Report to adjust

future total loss claims in the state of Arkansas;

f.    Award her compensatory damages in an amount equal to

the difference between the actual cash value of her vehicle and the

amount Safeco paid;

g.    Award her punitive damages in an amount sufficient to

punish Safeco for its wrongdoing and to deter others from engaging in

similar wrongdoing;

h.     Award Plaintiff all recoverable costs, expenses, and attorneys' fees incurred in prosecuting this action, together with all applicable interest; and

i.     Grant Plaintiff all such further relief deemed just and appropriate.

Respectfully Submitted,

**HOLLEMAN & ASSOCIATES, P.A.**
1008 West Second Street
Little Rock, Arkansas 72201
Tel. 501.975.5040
Fax 501.975.5043

By: */s/ John Holleman*
John Holleman, ABN 91056
*jholleman@johnholleman.net*
Timothy A. Steadman, ABN 2009113
*tim@johnholleman.net*
Jerry Garner, ABN 2014134
*jerry@johnholleman.net*

&

Lloyd "Tre" Kitchens, ABN 99075
*tkitchens@bradhendricks.com*
**THE BRAD HENDRICKS LAW FIRM**
500 C Pleasant Valley Drive
Little Rock, AR 72227
Telephone (501) 221-0444

ELECTRONICALLY FILED
Craighead County Circuit Court in Jonesboro
Candace Edwards, Craighead Circuit Clerk
2019-May-24  16:30:42
16JCV-19-546
C02D09 : 53 Pages

89-0762
MERCER HEALTH & BENEFITS
ADMINISTRATION   LLC
PO BOX 515097
LOS ANGELES     CA    90051-5097

**** REPRINTED FROM THE ARCHIVE.  THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS.  ****

ASHLEY  KIRBY
628 E OAK  AVE APT 12
JONESBORO  AR  72401-0905



OC-464/EP  4/99
G2

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****



**Safeco Insurance™**

A Liberty Mutual Company

MERCER HEALTH & BENEFITS
ADMINISTRATION   LLC
PO BOX 515097
LOS ANGELES     CA   90051-5097

March 12, 2018

Policy Number: X6061878
24-Hour Claims: 1-800-362-5961
Policy Service: 1-800-362-5961
Online Account Services: www.safeco.com

**THIS IS NOT A BILL.**
**IDENTIFICATION CARDS ENCLOSED**

ASHLEY KIRBY
628 E OAK AVE APT 12
JONESBORO AR 72401-0905

Welcome to Safeco]

We believe insurance shouldn't be any more complex than it has to be.   Welcome to an easier experience with Safeco.

Enclosed is your new automobile policy.   Read it through carefully.   It will give you a detailed description of the type and amount of your coverage, any deductibles (your out-of-pocket costs) that apply and the effective date of your policy.   If, after reading your policy, you have any questions or want to find out about discounts that may apply to your policy, please call 1-800-362-5961.

The premium for your policy is $2,079.20 for the March 12, 2018 to March 12, 2019 policy term. Your policy is being paid by payroll deduction.

For added convenience, visit www.safeco.com and make use of our automated services available to you including, but not limited to:

- View your policy documents.
- Order a copy of your policy and/or insurance ID cards.
- Report to us a name change, or change of address.

For all other assistance please call your agent at 1-800-362-5961.

Thank you for your business.   We look forward to serving you.

PLEASE SEE REVERSE
**SAFECO INSURANCE COMPANY OF ILLINOIS**

OC-429/EP  10/13

**** REPRINTED FROM THE ARCHIVE.  THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

Sincerely,

Tyler Asher
President, Safeco Insurance

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

## Disclosure to Safeco Policyholders Regarding Medical Payments

In most states, including those listed below, Safeco will pay or reimburse a Medical Provider's charge for medical treatment, medical service, medication or prosthesis covered by the Medical Payments or Personal Injury Protection coverage provided by your auto policy by paying (subject to applicable policy limits) the lowest of (a) the billed charge, (b) the 80th percentile charge indicated by the FAIRHealth medical-charge database for similar services in the same geographic area, (c) the amount authorized by a state mandated fee schedule or by another applicable law or regulation, or (d) the amount authorized by a written preferred-provider network or organization agreement to which the Medical Provider is a party. Safeco pays claims in this manner to comply with state regulations and policy language and to conserve insureds' limited PIP and MedPay benefits.

This disclosure applies to personal auto policies issued in Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, District of Columbia, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, North Carolina, North Dakota, Ohio, South Carolina, South Dakota, Tennessee, Texas, Vermont, Virginia, Wisconsin and Wyoming.

"Safeco" means Safeco Insurance Company of America, Safeco Insurance Company of Illinois, Safeco Insurance Company of Indiana, Safeco Insurance Company of Oregon, Safeco National Insurance Company, Safeco Surplus Lines Insurance Company, General Insurance Company of America, First National Insurance Company of America, American States Insurance Company, American States Preferred Insurance Company, and American Economy Insurance Company.

"Medical Provider" means any hospital, clinic, pharmacy, physician, physician's assistant, chiropractor, nurse, nurse practitioner, emergency medical technician, and/or any other person or entity who claims or claimed a right to payment for providing medical treatment, medical services, medication, or prosthesis for an injury covered by the Medical Payments or Personal Injury Protection coverage provided by your auto policy.

···· REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ····

 **Safeco** Insurance™

A Liberty Mutual Company

## Consumer Privacy Statement

Safeco appreciates the trust you place in us when you purchase insurance from one of our companies. We are committed to protecting your nonpublic personal information ("personal information") and we value you as a customer.

To learn more about how Safeco collects and uses your personal information, please read the following notice.

### Safeco's sources of information about you

We collect personal information about you from different sources, including:

- The information you provide on applications or other forms (such as your name, address and Social Security number);
- Your transactions with us, our affiliates or others (such as your payment history and claims information);
- The information we receive from a consumer reporting agency or insurance support organization (such as your credit history, driving record or claims history); and
- Your independent insurance producer (such as updated information pertaining to your account).

### Safeco's use of your personal information

We only disclose personal information about our customers and former customers as permitted by law. Generally, this includes sharing it with third parties to administer your transactions with us, service your insurance policy or claim, detect and prevent fraud, or with your authorization. These third parties may include independent insurance producers authorized to sell Safeco insurance products, independent contractors (such as automobile repair facilities and property inspectors), independent claims representatives, insurance support organizations, other insurers, auditors, attorneys, courts and government agencies. We may also disclose your personal information to other financial institutions with whom we have joint marketing agreements. When we disclose your information to these individuals or organizations, we require them to use it only for the reasons we gave it to them.

We may also share information about our transactions (such as payment history and products purchased) and experiences with you (such as claims made) within our Safeco family of companies.

Safeco does not sell your personal information to others and we do not provide your information to third parties for their own marketing purposes.

### Independent Safeco Insurance Agents

The independent insurance agents authorized to sell Safeco products are not Safeco employees and not subject to Safeco's Privacy Policy. Because they have a unique business relationship with you, they may have additional personal information about you that Safeco does not have. They may use this information differently than Safeco. Contact your Safeco distributor to learn more about their privacy practices.

### Information about Safeco's web site

If you have internet access and want more information about our web site specific privacy and security practices, click on the Privacy Policy link on www.safeco.com.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

**Protecting your personal information from unauthorized access**

We maintain physical, electronic and procedural safeguards to protect your personal information. Our employees are authorized to access customer information only for legitimate business purposes.

**State Privacy Laws**

This privacy statement may be supplemented by privacy laws in your state. We will protect your information in accordance with state law.

**This Privacy Statement applies to the following members of the Safeco family of companies:**

**American Economy Insurance Company**
**American States Insurance Company**
**American States Insurance Company of Texas**
**American States Lloyds Insurance Company**
**American States Preferred Insurance Company**
**First National Insurance Company of America**
**General Insurance Company of America**
**Insurance Company of Illinois**
**Liberty County Mutual Insurance Company**
**Safeco Insurance Company of America**
**Safeco Insurance Company of Illinois**
**Safeco Insurance Company of Indiana**
**Safeco Insurance Company of Oregon**
**Safeco Lloyds Insurance Company**
**Safeco National Insurance Company**
**Safeco Surplus Lines Insurance Company**

© 2011 Safeco Insurance Company of America, Member of Liberty Mutual Group. All Rights Reserved.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

## Insurance Information and the Use of Credit

Thank you for being a Safeco Insurance customer. We appreciate your business and the trust you have placed with us.

Like most insurance companies, we use credit information as a factor in determining the cost of your insurance. We do so because research studies have shown it to be an accurate predictor of the probability of future insurance losses. Studies also show that a majority of customers benefit from the use of credit information.

It's important to understand that many factors are used to determine the cost of insurance such as driving history for auto insurance, the year your home was built for home insurance, previous insurance and claims history, discounts and coverage limits. Your credit history is also part of the overall calculation that determines your premium. We look at credit history very differently than a financial institution because we're not evaluating your credit-worthiness. We're using credit-based information in combination with other factors to help us properly price insurance risks.

FREQUENTLY ASKED QUESTIONS

Why do you use my credit information?
Insurance companies often use credit information because it is a predictor of the probability of future losses. Its use is an objective way to assess and price potential risk and enables us to more accurately price policies and equitably distribute insurance costs among our policyholders.

Is my credit history the only factor that determines my rate?
No. Many factors such as previous insurance, claims history, discounts and coverage limits go into determining what you pay for your insurance. In addition, the information you provided when you purchased your policy and the verification of that information is used to determine your rate.

How do I know if I'm getting the best possible rate?
One of the benefits of buying insurance through an independent agent is their ability to advise you on your options and ways to save money. Between the guidance of your local independent agent and a vast array of Safeco options, you can be sure you're getting the coverage you want at a competitive rate. If you have any questions, we encourage you to contact your independent Safeco agent and ask for an insurance checkup.

How is credit information used in determining my rate?
Safeco, like most insurance companies, calculates an insurance score based on information from your credit report. Different values or weights are assigned to the information contained in your credit report, such as payment history, amounts owed or the number of applications for new credit lines. The total sum of these weights creates your insurance score. As a result, it is likely that some of your credit information helped to improve your insurance score, and some lowered it. The calculation process and weights used by each insurance company and/or its service providers are proprietary and confidential. As a result, we do not disclose your specific score or the details of how it was calculated.

How did my credit information affect my rate?
Due in part to your credit information, your rate was adversely affected. The reasons for this are explained in this document under "What factors affected my insurance score?"

What can I do to improve my insurance score?
Safeco or your independent agents are not credit counselors or financial advisors, so we are not in a position to provide specific advice on how to improve your credit or insurance score. However, we can tell you that the areas that have the biggest impact on your credit report are: payment history, amounts owed, length of credit history, new credit applications and type of credit accounts. To get a copy of your current credit report, contact TransUnion and follow the instructions under "How do I get a copy of my credit report?"

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

How do I get a copy of my credit report?
The Fair Credit Reporting Act allows you to request a free copy of your credit report within 60 days of receipt of this letter. To get a copy of your report do one of the following:

- Call TransUnion at 1-800-645-1938; or

- Write to TransUnion Consumer Disclosure Center, PO BOX 1000, Chester, PA 19022.

TransUnion can give you information about your credit report. However, they did not make any decisions about your insurance premium or how your policy was rated, and they are unable to answer questions about those decisions.

What can I do if I think my credit report is not accurate?
If you believe your report is incomplete or incorrect, you may contact TransUnion to dispute the accuracy or completeness of the information. At your request, they will review your credit information and if corrections are made, they will send you an updated report.

Can I get my policy re-rated if corrections are made to my credit report?
Yes. If you would like us to re-evaluate your policy after your credit report has been corrected, please send us a copy of the documentation from the credit reporting agency indicating the report has been corrected. Include your name, policy number and address, and ask for a credit-based insurance score re-evaluation. Mail your request to: Safeco ATTN: UW Verification & Policy Support, PO Box 515097, Los Angeles, CA, 90051-5097 or fax it to 877-344-5107.

Where can I go to learn more about credit and how it is used in insurance?
To learn more about credit scores visit http://www.myfico.com/CreditEducation/CreditScores.aspx.   For more information about how Safeco uses information from your credit report go to http://www.safeco.com/insurancescores.

Who is sending me this notice?
This notice is provided to you by SAFECO INSURANCE COMPANY OF ILLINOIS          who underwrites your Automobile Policy X6061878

What factors affected my insurance score?
Below is more information about the factors that affected your insurance score and what you can do to improve them:

CN-7278/EP 10/12

Number of accounts ever past due

*What information is this message derived from?* The score considers the number of accounts that were ever 30 days or more past due, reported in the last five (5) years.

*How does this affect my insurance score?* Research shows that consumers with missed payments have more insurance losses.

*What can I do to improve this aspect of my score?* Avoid letting accounts get to a delinquent status. Delinquencies remain on your credit report for seven years. Pay any accounts that are past due as soon as possible.

(Reason Code 310)
CN-7288/EP 7/12

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

Number of accounts ever past due

*What information is this message derived from?* The score considers the number of accounts that were ever 30 days or more past due, reported in the last five (5) years.

*How does this affect my insurance score?* Research shows that consumers with missed payments have more insurance losses.

*What can I do to improve this aspect of my score?* Avoid letting accounts get to a delinquent status. Delinquencies remain on your credit report for seven years. Pay any accounts that are past due as soon as possible.

(Reason Code 310)
CN-7288/EP 7/12

**** REPRINTED FROM THE ARCHIVE.  THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

Number of adverse public record(s) or adverse account(s)

*What information is this message derived from?* The score considers how many adverse public records and accounts are on your credit file. Adverse public records can include bankruptcies, liens, garnishments, judgments and suits. Adverse accounts include accounts sent to collections, in repossession, charged off, or paying under a wage earner plan. For this score, adverse account records showing derogatory items greater than $100 are used.

*How does this affect my insurance risk score?* Research shows that consumers with adverse public records and / or adverse accounts have more insurance losses.

*What can I do to improve this aspect of my score?* Adverse accounts stay on your credit report for seven (7) years. Most adverse public records remain on your credit report for seven (7) years. Some bankruptcies may remain on your report for up to ten (10) years and unpaid tax liens may remain on your report indefinitely.

(Reason Code 327)
CN-7302/EP 7/12

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

Account(s) sent to collections with amounts due

*What information is this message derived from?* The score considers account(s) sent to collections with amounts owed.

*How does this affect my insurance score?* Research shows that consumers with account(s) sent to collections have more insurance losses.

*What can I do to improve this aspect of my score?* Once an account sent to collections has been reported on your credit file, your report will be impacted by this event. Collections stay on your credit report for seven years.

(Reason Code 312)
CN-7290/EP 7/12

**** REPRINTED FROM THE ARCHIVE.  THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

Relationship of balance to available limit on credit card(s)

*What information is this message derived from?* The score considers the number of open credit cards reported in the last 12 months with high balances as compared to the available limit.

*How does this affect my insurance score?* Research shows that consumers who maintain high balances on their credit card accounts have more insurance losses.

*What can I do to improve this aspect of my score?* Pay more than the minimum amount owed for that particular month. This helps bring down the total amount owed quicker and may reduce finance charges. The impact of this information will likely improve as the available balance is increased.

(Reason Code 301)
CN-7280/EP 7/12

\*\*\*\* REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS \*\*\*\*

Policy Number:  X6061878

## IMPORTANT NOTICE

Your rates were impacted, at least in part, due to prior insurance information provided by:

LexisNexis
Current Carrier Report
P.O. Box 105108
Atlanta, GA 30348-5108
1-800-456-6004
www.consumerdisclosure.com

When you contact LexisNexis, use the following reference number: 6AFGQWH

LexisNexis can provide you with a copy of your report, but will not be able to answer questions regarding your insurance application. All decisions regarding your insurance application, including the premium charged, were made by SAFECO INSURANCE COMPANY OF ILLINOIS

The Fair Credit Reporting Act gives you certain rights regarding information about you. You have the right, under Section 612, to obtain a free copy of the report from the company shown above, as long as you request it within 60 days of receipt of this notice. You also have the right, under Section 611, to dispute with them any information contained in the report.

CN-7126/EP 11/09

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

## SAFECO ENHANCED™ COVERAGE LEVEL

Congratulations! You have purchased one of our finest auto coverage levels available — the Safeco Enhanced coverage level. With Safeco Enhanced, you receive more coverage, higher limits and better benefits than with our basic policy.

Below are just some of the great features and benefits you receive with Safeco Enhanced. Safeco's Enhanced coverage level provides you even more benefits and coverage that are not listed here. Read the policy and endorsement in this packet to learn more about the coverages and benefits you're receiving.

| Features | Benefits |
|---|---|
| **Accident Forgiveness** | After six consecutive years without an at-fault accident or violation, your premium will not increase if you have an at-fault accident. |
| **Auto Theft Transportation** | If your vehicle is stolen, we pay up to $25 a day to a maximum benefit of $750 to cover your transportation expenses. |
| **Audio/Visual Equipment** | We cover audio/visual equipment such as a stereo or DVD player permanently installed by the manufacturer or manufacturers' dealership. We will pay up to $1,000 if the equipment was installed by someone else. |
| **Customized Equipment** | We provide up to $1,000 for permanently installed customized equipment such as new wheel rims. |
| **Loss of Earnings** | We will pay you up to $250 a day if you have to miss work in order to attend a trial or a court hearing at our request. |
| **Bail Bonds** | We will pay up to $1,000 for the cost of a bail bond required due to an accident. |

If you have any questions about your policy, please feel free to contact your independent Safeco agent.

*No coverage is provided by this summary. If there is any conflict between the policy and this summary, the provisions of the policy, including any endorsements, shall prevail.*

SA-2912/EP 11/12

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

 **Safeco** Insurance™
A Liberty Mutual Company

**POLICY NUMBER:** X6061878

# SAFECO INSURANCE COMPANY OF ILLINOIS
# AUTOMOBILE POLICY DECLARATIONS

**NAMED INSURED:**
ASHLEY KIRBY
628 E OAK AVE APT 12
JONESBORO AR  72401-0905

**POLICY PERIOD FROM:**  MAR. 12 2018
**TO:**  MAR. 12 2019

at 12:01 A.M. standard time at
the address of the insured as
stated herein.

**AGENT:**
MERCER HEALTH & BENEFITS
ADMINISTRATION LLC
PO BOX 515097
LOS ANGELES    CA   90051-5097

**AGENT TELEPHONE:**
1-800-362-5961

| RATED DRIVERS | ASHLEY KIRBY |
|---|---|

**2015 BUICK**   VERANO           4 DOOR SEDAN        ID# 1G4PP5SK0F4205563

Insurance is afforded only for the coverages for which limits of liability or
premium charges are indicated.

| COVERAGES | 2015 BUIC LIMITS | PREMIUMS |
|---|---|---|
| **LIABILITY:** | | |
| BODILY INJURY | $100,000 Each Person $300,000 Each Occurrence | $  440.90 |
| PROPERTY DAMAGE | $50,000 Each Occurrence | 312.20 |
| PIP MEDICAL EXPENSE | | REJECTED |
| WORK LOSS | | REJECTED |
| ACCIDENTAL DEATH BENEFITS | | REJECTED |
| **UNINSURED MOTORISTS:** | | |
| BODILY INJURY | $100,000 Each Person $300,000 Each Accident | 150.00 |
| **UNDERINSURED MOTORISTS:** | | |
| BODILY INJURY | $100,000 Each Person $300,000 Each Accident | 38.40 |
| COMPREHENSIVE | Actual Cash Value Less $500 Deductible Full Safety Glass | 447.50 |
| COLLISION | Actual Cash Value Less $1000 Deductible | 583.10 |
| **ADDITIONAL COVERAGES:** | | |
| ROADSIDE ASSISTANCE PACKAGE | | 8.50 |
| ENHANCED COVERAGE LEVEL | | 98.60 |
| | TOTAL | $ 2,079.20 |

**PREMIUM SUMMARY**                                        **PREMIUM**
VEHICLE COVERAGES                                         $ 2,079.20

-CONTINUED-
P O BOX 515097, LOS ANGELES, CA 90051

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

 **Insurance**™

A Liberty Mutual Company

**POLICY NUMBER:**  X6061878

# SAFECO INSURANCE COMPANY OF ILLINOIS
## AUTOMOBILE POLICY DECLARATIONS
(CONTINUED)

| DISCOUNTS & SAFECO SAFETY REWARDS | You saved $1,043.50 | Included |
|---|---|---|

**TOTAL 12 MONTH PREMIUM** ................................................. $ 2,079.20

You may pay your premium in full or in installments.  There is no installment fee
for the following billing plans:  Full Pay.  Installment fees for all other billing
plans are listed below.  If more than one policy is billed on the installment bill,
only the highest fee is charged.  The fee is:
  $2.00 per installment for recurring automatic deduction (EFT)
  $5.00 per installment for recurring credit card or debit card
  $5.00 per installment for all other payment methods

YOU SAVED $1,043.50 BY QUALIFYING FOR THE FOLLOWING DISCOUNTS:
  Account
  Anti-Theft
  Accident Free
  Violation Free
  Coverage
  Newly Independent
  Preferred Payment Method

**POLICY FORMS APPLICABLE TO THIS POLICY:**
SA-1697/EP 9/90, SA-2890/AREP 1/15, SA-1701/EP 9/90, SA-2891/EP 12/13

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

# ENHANCED LEVEL ENDORSEMENT

It is agreed that the Essential Personal Auto Policy is amended as follows:

## PART A — LIABILITY COVERAGE

If the Declarations indicates that Part A — Liability Coverage applies, then the following applies:

### SUPPLEMENTARY PAYMENTS

Item **1.** is amended to increase the $250 to $1,000.

Item **3.** is amended to increase the $200 a day to $250 a day.

## PART D — COVERAGE FOR DAMAGE TO YOUR AUTO

The following items apply in the event of a covered **collision** or **comprehensive** loss:

### TRANSPORTATION EXPENSES

**B.1.** is replaced by the following:

    **1.**    Up to $25 per day, to a maximum of $750; or

### EXCLUSIONS

Exclusion **7.** is amended by increasing the $500 to $1,000.

Exclusion **19.** is amended by increasing the $500 to $1,000.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****



A Liberty Mutual Company

# ARKANSAS ESSENTIAL PERSONAL AUTO POLICY

SAFECO INSURANCE COMPANY OF ILLINOIS
Home Office:2815 Forbs Avenue, Suite 200, Hoffman Estates, Illinois 60192

(A stock insurance company.)

## READY REFERENCE TO YOUR AUTO POLICY

|  | Beginning On Page |
|---|---|
| **AGREEMENT** | **1** |
| **DEFINITIONS** | **1** |
| **PART A — LIABILITY COVERAGE** | **3** |
| Insuring Agreement | |
| Supplementary Payments | |
| Exclusions | |
| Limit of Liability | |
| Out of State Coverage | |
| Financial Responsibility | |
| Other Insurance | |
| **PART B — PERSONAL INJURY PROTECTION COVERAGE** | **7** |
| Section I — Automobile Medical Payments | |
| Section II — Work Loss Coverage | |
| Section II — Accident Death Benefit | |
| Conditions | |
| **PART C — UNINSURED/UNDERINSURED MOTORISTS COVERAGE** | **14** |
| Insuring Agreement | |
| Exclusions | |
| Limit of Liability | |
| Other Insurance | |
| **PART D — COVERAGE FOR DAMAGE TO YOUR AUTO** | **19** |
| Insuring Agreement | |
| Deductible | |
| Transportation Expenses | |
| Exclusions | |
| Limit of Liability | |
| Payment of Loss | |
| No Benefit to Bailee | |
| Other Sources of Recovery | |
| Appraisal | |
| **PART E — DUTIES AFTER AN ACCIDENT OR LOSS** | **25** |
| **PART F — GENERAL PROVISIONS** | **25** |
| Policy Period and Territory | |
| Changes | |
| Termination | |
| Two or More Autos Insured; Two or More Auto Policies | |

SA-2890/AREP 1/15

**** REPRINTED FROM THE ARCHIVE.  THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

**ADDITIONAL COVERAGES**                                              **29**
    Roadside Assistance Coverage
    Loss of Use Coverage
    Full Safety Glass Coverage

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

## AGREEMENT

In return for your payment of all premiums, and in reliance upon the statements in the application we agree to insure you subject to the terms, conditions and limitations of this policy. We will insure you for the coverages and limits shown on the Declarations. Your policy consists of the policy contract, Declarations and endorsements applicable to the policy.

## DEFINITIONS

**A.**   Throughout this policy, "you" and "your" refer to:

  **1.**   The "named insured" shown in the Declarations;

  **2.**   The spouse if a resident of the same household;

  **3.**   The civil partner, if a resident of the same household, by civil union licensed and certified by the state; or

  **4.**   The domestic partner, if a resident of the same household;

  **"Domestic partner"** means a person living as a continuing partner with you and:

  **a.**   is at least 18 years of age and competent to contract;

  **b.**   is not a relative; and

  **c.**   shares with you the responsibility for each other's welfare, evidence of which includes:

  **(1)**   the sharing in domestic responsibilities for the maintenance of the household; or

  **(2)**   having joint financial obligations, resources, or assets; or

  **(3)**   one with whom you have made a declaration of domestic partnership or similar declaration with an employer or government entity.

  **Domestic partner** does not include more than one person, a roommate whether sharing expenses equally or not, or one who pays rent to the named insured.

**B.**   "We," "us" and "our" refer to the Company as shown in the Declarations providing this insurance.

**C.**   For purposes of this policy, a private passenger auto shall be deemed to be owned by a person if leased:

  **1.**   Under a written agreement to that person; and

  **2.**   For a continuous period of at least six months.

**D.**   Throughout the policy, **"minimum limits"** refers to the following limits of liability required by Arkansas law to be provided under a policy of automobile liability insurance:

  **1.**   $25,000 for each person, subject to $50,000 for each accident, with respect to **bodily injury;**

  **2.**   $25,000 for each accident with respect to **property damage.**

Other words and phrases are defined. They are in bold type when used.

**E.**   **"Bodily injury"** means bodily harm, sickness or disease, including death that results.

**F.**   **"Business"** includes trade, profession or occupation.

**G.**   **"Diminution in value"** means the actual or perceived loss in market or resale value which results form a direct and accidental loss.

**H.**   **"Family member"** means a person related to you by blood, marriage, civil union, domestic partnership or adoption who is a resident of your household. This includes a ward or foster child who is a resident of your household.

**I.**   **"Fungi"** means any type or form of fungus, including yeast, mold or mildew, blight or mushroom and any mycotoxins, spore, scents or other substances, products or byproducts produced, released by or arising out of **fungi,** including growth, proliferation or spread of **fungi** or the current or past presence of **fungi.** However, this definition does not include any **fungi** intended by the **insured** for consumption.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

**J.**  **"Occupying"** means in; upon; or getting in, on, out or off.

**K.**  **"Property damage"** means physical injury or destruction of tangible property including loss of use.

**L.**  **"Punitive or exemplary damages"** include damages which are awarded to punish or deter wrongful conduct, to set an example, to fine, penalize or impose a statutory penalty, and damages which are awarded for any purpose other than as compensatory damages for **bodily injury** or **property damage.**

**M.**  **"Trailer"** means a vehicle designed to be pulled by a:

   **1.**  Private passenger auto; or

   **2.**  Pickup, van or motorhome.

It also means a recreational camping vehicle, a farm wagon or farm implement while towed by a vehicle listed in **M.1.** or **M.2.** above.

**N.**  **"Your covered auto"** means:

   **1.**  Any vehicle shown in the Declarations.

   **2.**  **a.**  Any newly acquired vehicle, whether operational or not, on the date you become the owner, subject to conditions for **Newly Acquired Replacement Vehicle** and **Newly Acquired Additional Vehicle** under **N.2.b.** below. Any newly acquired vehicle must be of the following types:

       **(1)**  a private passenger auto;

       **(2)**  a pickup or van that:

          **(a)**  has a Gross Vehicle Weight Rating of 12,000 lbs or less; and

          **(b)**  is not used for the delivery or transportation of goods and materials unless such use is:

             **i.**  incidental to your **business** of installing, maintaining or repairing furnishings or equipment; or

             **ii.**  for farming or ranching; or

       **(3)**  a motorhome or **trailer.**

     **b.**  A newly acquired vehicle is subject to the following conditions:

       **(1)**  **Newly Acquired Replacement Vehicle.** If the vehicle you acquire replaces one shown in the Declarations, the replacement vehicle will have the same coverage as the vehicle it replaced, other than Part **D** — Coverage for Damage to Your Auto. This provision applies only if there is no other insurance policy that provides coverage for that replacement vehicle.

          Part **D** — Coverage for Damage to Your Auto shall apply for the first thirty (30) days after you acquire the vehicle, including the date of acquisition, only to the extent Part **D** — Coverage for Damage to Your Auto applied to the vehicle being replaced. You must notify us within thirty (30) days after you acquire the replacement vehicle for Part **D** — Coverage for Damage to Your Auto to continue.

       **(2)**  **Newly Acquired Additional Vehicle.** For any newly acquired vehicle that is in addition to any shown in the Declarations coverage shall apply for the first thirty (30) days after you acquire the vehicle, including the date of acquisition. Coverage shall be the broadest coverage we provide for any vehicle shown in the Declarations. This coverage applies only if:

          **(a)**  you acquire the additional vehicle during the policy period shown on the Declarations; and

          **(b)**  there is no other insurance policy that provides coverage for the additional vehicle.

          If you wish to add or continue coverage you must ask us to insure the additional vehicle within thirty (30) days after you acquire the additional vehicle. This thirty (30) days of coverage includes the day you acquire the vehicle.

       **(3)**  Collision Coverage for a newly acquired vehicle begins on the date that you acquire the vehicle. However, if the Declarations does not indicate that Collision Coverage applies to at least one vehicle, you must ask us to insure the newly acquired vehicle within four (4) days after you acquire it. If a loss occurs during the four (4) days after you acquire the vehicle but

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

before you asked us to insure the newly acquired vehicle, a $500 collision deductible will apply.

**(4)** Comprehensive Coverage for a newly acquired vehicle begins on the date that you acquire the vehicle. However, if the Declarations does not indicate that Comprehensive Coverage applies to at least one vehicle, you must ask us to insure the newly acquired vehicle within four (4) days after you acquire it. If a loss occurs during the four (4) days after you acquire the vehicle but before you asked us to insure the newly acquired vehicle, a $500 comprehensive deductible will apply.

**3.** Any auto or **trailer** you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

    **a.** breakdown;

    **b.** repair;

    **c.** servicing;

    **d.** loss; or

    **e.** destruction.

This provision **(N.3.)** does not apply to Coverage for Damage to Your Auto.

## PART A — LIABILITY COVERAGE

### INSURING AGREEMENT

**A.** We will pay damages for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for **bodily injury** or **property damage** not covered under this policy.

**B.** **"Insured"** as used in this Part means:

    **1.** You or any **family member** for the ownership, maintenance or use of any auto or **trailer.**

    **2.** Any person using **your covered auto** with your express or implied permission. The actual use must be within the scope of that permission.

    **3.** For **your covered auto,** any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under **B.1.** and **B.2.** above.

    **4.** For any auto or **trailer,** other than **your covered auto,** any other person or organization but only with respect to legal responsibility for acts or omissions of you or any **family member** for whom coverage is afforded under this Part. This provision **(B.4.)** applies only if the person or organization does not own or hire the auto or **trailer.**

### INTEREST ON JUDGMENTS

We will pay interest on judgments subject to all of the following:

    **1.** Any notice, demand, summons, judgment, or any process has been promptly forwarded to us as required by the policy conditions.

    **2.** We accept the defense or agree to the judgment.

    **3.** We will pay the interest on that part of the judgment that is covered and that does not exceed our applicable limit of liability.

    **4.** We will pay interest that accrues after entry of judgment and before we pay, tender, or deposit in court.

    **5.** If we appeal the judgment, we will pay interest on the entire judgment.

    **6.** Post-judgment interest is in addition to the applicable limit of liability.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

7. Where we are required to cover prejudgment interest, it shall be included in the limit of liability and is not an additional amount of insurance.

## SUPPLEMENTARY PAYMENTS

We will pay on behalf of an **insured:**

1. Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in **bodily injury** or **property damage** covered under this policy. We are not obligated to apply for or furnish such bonds.

2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.

3. Up to $200 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

4. Other reasonable expenses incurred at our request.

5. All expenses incurred by an **insured** for first aid to others at the time of the auto accident, not to exceed $10,000.

## EXCLUSIONS

A. We do not provide Liability Coverage for:

1. Any **insured** who intentionally causes **bodily injury** or **property damage** even if such **bodily injury** or **property damage** is of a different kind or degree than expected or intended, or such **bodily injury** or **property damage** is sustained by a different person or persons than expected or intended.

2. **Property damage** to property owned or being transported by any **insured.**

3. **Property damage** to property:

   a. rented to;

   b. used by; or

   c. in the care of;

   any **insured.**

   This exclusion **(A.3.)** does not apply to **property damage** to a residence or private garage.

4. **Bodily injury** to an employee of any **insured** during the course of employment. This exclusion **(A.4.)** does not apply to **bodily injury** to a domestic employee unless workers compensation benefits are required or available for that domestic employee.

5. Any **insured's** liability arising out of the ownership or operation of a vehicle while it is being used as public or livery conveyance. This exclusion **(A.5.)** does not apply to a share-the-expense car pool.

6. Any **insured** using any vehicle while employed in the pickup or delivery of newspapers or magazines, food or any products for the purpose of compensation. This exclusion does not apply to delivery that is incidental to an **insured's business.**

7. a. Any **insured** while employed or otherwise engaged in the **business** of:

      (1) selling;

      (2) repairing;

      (3) servicing;

      (4) storing; or

      (5) parking;

      vehicles designed for use mainly on public highways. This includes road testing and delivery.

   b. This exclusion **(A.7.)** does not apply to the ownership, maintenance or use of **your covered auto** by:

      (1) you;

      (2) any **family member;** or

**** REPRINTED FROM THE ARCHIVE.  THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

**(3)** any partner, agent or employee of you or any **family member.**

**8.** Any **insured** maintaining or using any vehicle while that **insured** is employed or otherwise engaged in any **business** (other than farming or ranching) not described in exclusions **A.6.** or **A.7.** This exclusion **(A.8.)** does not apply to the maintenance or use of a:

**a.** private passenger auto;

**b.** pickup, motorhome or van that:

**(1)** you own; or

**(2)** you do not own while used as a temporary substitute for **your covered auto** which is out of normal use because of its:

**(a)** breakdown;

**(b)** repair;

**(c)** servicing;

**(d)** loss; or

**(e)** destruction; or

**c.** **trailer** used with a vehicle described in **A.8.a.** or **A.8.b.** above.

**9.** Any **insured** using a vehicle without the express or implied permission of the owner or other person having lawful possession, or using a vehicle beyond the scope of the permission granted. However, this exclusion does not apply to a **family member** using **your covered auto.**

**10. a.** **Bodily injury** or **property damage** for which any **insured:**

**(1)** is an **insured** under a nuclear energy liability policy; or

**(2)** would be an **insured** under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

**b.** A nuclear energy liability policy is a policy issued by any of the following or their successors:

**(1)** Nuclear Energy Liability Insurance Association;

**(2)** Mutual Atomic Energy Liability Underwriters; or

**(3)** Nuclear Insurance Association of Canada.

**11.** **Punitive or exemplary damages** awarded against any **insured.**

**12.** **Bodily injury** to you or any **family member.**

**13.** **Bodily injury** or **property damage** arising out of the use of **your covered auto** while leased or rented to others. However, this exclusion does not apply to the operation of **your covered auto** by you or a **family member.**

**14.** **Bodily injury** or **property damage** arising out of a criminal act or omission of the **insured.** This exclusion applies regardless of whether that **insured** is actually charged with, or convicted of, a crime. However, this exclusion **(14.)** does not apply to traffic violations.

**B.** We do not provide Liability Coverage for the ownership, maintenance or use of:

**1. a.** Any vehicle which:

**(1)** has fewer than four wheels;

**(2)** is designed mainly for use off public roads; or

**(3)** is a vehicle not licensed for use on public roads.

**b.** This exclusion does not apply:

**(1)** while such vehicle is being used by an **insured** in a medical emergency; or

**(2)** to any **trailer.**

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

**2.** Any vehicle, other than **your covered auto,** which is:

    **a.** owned by you; or

    **b.** furnished or available for your regular use.

**3.**   **a.** Any vehicle, other than **your covered auto,** which is:

      **(1)** owned by any **family member** or other person who resides with you; or

      **(2)** furnished or available for the regular use of any **family member** or other person who resides with you.

    **b.** However, this exclusion **(B.3.)** does not apply to you while you are maintaining or **occupying** any vehicle which is:

      **(1)** owned by a **family member** or other person who resides with you; or

      **(2)** furnished or available for the regular use of a **family member** or other person who resides with you.

**4.** Any vehicle while it is:

    **a.** operating on a surface designed or used for racing, except for an organized and controlled event that is not a speed, performance, stunt or demolition event;

    **b.** participating in a high performance driving or racing instruction course or school; or

    **c.** preparing for, practicing for, used in, or competing in any prearranged or organized:

      **(1)** race activity; or

      **(2)** speed, performance, stunt, or demolition contest or exhibition.

## LIMIT OF LIABILITY

**A.** If the Declarations indicates "per person"/"per accident" coverage applies:

The limit of liability as shown in the Declarations for "each person" for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care and loss of services (including loss of consortium and wrongful death), arising out of **bodily injury** sustained by any one person in any one auto accident.

Subject to this limit for "each person," the limit of liability shown in the Declarations for "each accident" for Bodily Injury Liability is our maximum limit of liability for all damages for **bodily injury** resulting from any one auto accident.

The limit of liability shown in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all **property damage** resulting from any one accident.

This is the most we will pay regardless of the number of:

**1.** **Insureds;**

**2.** Claims made;

**3.** Vehicles or premiums shown in the Declarations; or

**4.** Vehicles involved in the auto accident.

**B.** If the Declarations indicate **Combined Single Limit** applies, Paragraph **A.** above is replaced by the following:

The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of:

**1.** **Insureds;**

**2.** Claims made;

**3.** Vehicles or premiums shown in the Declarations; or

**4.** Vehicles involved in the auto accident.

We will apply the limit of liability to provide any separate **minimum limits** required by law for **bodily injury** and **property damage** liability. However, this provision will not change our total limit of liability.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

**C.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part **B** or Part **C** of this policy.

**D.** A vehicle and attached **trailer** are considered one vehicle. Therefore the limits of liability will not be increased for an accident involving a vehicle which has an attached **trailer**.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which **your covered auto** is principally garaged, we will interpret your policy for that accident as follows:

**A.** If the state or province has:

   **1.** A financial responsibility or similar law specifying limits of liability for **bodily injury** or **property damage** higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

   **2.** A compulsory insurance or similar law requiring nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum limits and types of coverage.

**B.** No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required. The **insured** must reimburse us if we make a payment that we would not have made if this policy was not certified as proof of financial responsibility.

## OTHER INSURANCE

If there is other applicable liability insurance available any insurance we provide shall be excess over any other applicable liability insurance. If more than one policy applies on an excess basis, we will bear our proportionate share with other collectible liability insurance.

However, we will provide primary insurance for a vehicle you do not own if:

   **1.** A duly licensed automobile dealer provides a vehicle to you or a **family member:**

   **a.** for use as a temporary substitute while **your covered auto** is out of normal use because of its breakdown, repair or servicing; or

   **b.** to demonstrate the vehicle;

   **2.** The vehicle is rented or leased to you or any **family member** from rental company for a period not more than 90 days.

## PART B — PERSONAL INJURY PROTECTION COVERAGE

### SECTION I — AUTOMOBILE MEDICAL PAYMENTS COVERAGE

We will pay benefits for **medical expense** with respect to **bodily injury** sustained by an **insured** caused by an accident arising out of the maintenance or use of a **motor vehicle** as a **motor vehicle**.

### Definitions

When used in reference to this coverage:

**"Insured"** means:

   **1.** You or any **family member** who sustains **bodily injury**, while:

   **a.** **occupying**; or

   **b.** a **pedestrian** struck by;

   **c.** motor vehicle.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

2. Any other person who sustains **bodily injury:**

    a.   while:

        **(1)** **occupying;** or

        **(2)** a **pedestrian** struck by;

        **your covered auto.**

    b.   while **occupying** a motor vehicle other than **your covered auto.** The **bodily injury** must result from the:

        **(1)** use of such **motor vehicle** by you or its operation on your behalf by a private chauffeur or domestic servant; or

        **(2)** use of such **motor vehicle** by a **family member,** provided it is a **private passenger auto** or **trailer.**

**"Medical expense"** means all **usual and customary charges** incurred for reasonable and necessary expenses rendered within two years from the date of accident for:

1. Medical, hospital, X-ray, professional nursing, dental, surgical, ambulance, prosthetic and funeral expenses;

2. Any nonmedical remedial care and treatment rendered in accordance with a recognized religious method of healing.

**Medical expense** does not include expenses in excess of those for a semiprivate room, unless more intensive care is medically required.

We have the right to review **medical expenses** and services to determine if they are reasonable and necessary for the **bodily injury** sustained.

**"Motor vehicle"** means a land motor vehicle, **trailer** or semitrailer.

However, **motor vehicle** does not include a:

1. Farm tractor or other equipment designed for use mainly off public roads, while not upon public roads.

2. Vehicle operated upon rails or crawler treads.

3. Vehicle located for use as a residence or premises.

**"Pedestrian"** means any person who is not **occupying** any vehicle other than a:

1. Motorcycle; or

2. Vehicle operated by human or animal power.

**"Private passenger auto"** means a **motor vehicle** which is a private passenger, station wagon or jeep type auto.

**"Usual and customary charges"** as used in this Part mean:

Any amount which we determine represents a customary charge for services in the geographic area in which the service is rendered. To determine whether a charge is customary, we may consider outside sources of information of our choice, including, but not limited to:

1. Licensed, certified or registered healthcare professionals;

2. Medical examination;

3. Medical file reviews;

4. Medical bill review services; or

5. Computerized data bases.

The **insured** shall not be responsible for payment of any reduction applied by us. If a medical provider disputes an amount paid by us, we will be responsible for resolving such disputes.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

"**Your covered auto**" means a **motor vehicle** designated in the Declarations as **your covered auto** to which this coverage applies and includes a:

1.  **Motor vehicle** not owned by you while used as a temporary substitute for **your covered auto** which is out of normal use because of its:

    a.  breakdown;

    b.  repair;

    c.  servicing;

    d.  loss; or

    e.  destruction.

2.  **Trailer** designed for use with a **private passenger auto** if not being used for **business** purposes with another type vehicle.

**Exclusions**

A.  We will not provide Automobile Medical Payments Coverage for **bodily injury:**

    1.  Sustained by any **insured** while:

        a.  operating **your covered auto** without your express or implied permission. The actual use must be within the scope of that permission; or

        b.  not in lawful possession of **your covered auto.**

    2.  Due to:

        a.  war (declared or undeclared);

        b.  civil war;

        c.  insurrection;

        d.  rebellion or revolution; or

        e.  any act or condition incident to any of the above.

    3.  Resulting from the:

        a.  radioactive;

        b.  toxic;

        c.  explosive; or

        d.  other hazardous;

        properties of nuclear material.

B.  We will not provide Automobile Medical Payments Coverage for **bodily injury** sustained by:

    1.  You while **occupying** any **motor vehicle,** other than **your covered auto,** which is owned by or furnished or available for your regular use.

    2.  Any **family member** while **occupying** any **motor vehicle,** other than **your covered auto,** which is:

        a.  owned by; or

        b.  furnished or available for the regular use of;

        you or that **family member.**

    3.  Any **insured,** other than you or any **family member,** while **occupying** any **motor vehicle,** other than **your covered auto,** which is:

        a.  owned by; or

        b.  furnished or available for the regular use of;

        you or any **family member.**

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

4. Any **insured** while **occupying your covered auto** when it is being used as a public or livery conveyance unless such use is stated in the Declarations.

5. Any **insured**, other than you or any **family member**, while **occupying** any **motor vehicle** other than **your covered auto** when it is being used as a public or livery conveyance.

6. Any **insured** other than you or any **family member**:

   a. while **occupying** any **motor vehicle**, other than **your covered auto**, while employed or otherwise engaged in the **business** or occupation of:

      **(1)** selling;

      **(2)** repairing;

      **(3)** servicing;

      **(4)** storing; or

      **(5)** parking;

      **motor vehicles.**

   b. Arising out of the maintenance or use of any **motor vehicle**, other than **your covered auto** or a motorcycle, by that **insured** while employed or otherwise engaged in any **business** not described in **6.a.** This exclusion **(6.b.)** does not apply to **bodily injury** resulting from the operation or occupancy of a:

      **(1)** **private passenger auto;** or

      **(2)** **trailer** used with such **private passenger auto** or **your covered auto;**

      by you or your private chauffeur or domestic servant.

7. Sustained while **occupying** a vehicle without either the express or implied permission of the owner or other person having lawful possession, or using a vehicle beyond the scope of the permission granted. However, this exclusion does not apply to a **family member** using **your covered auto.**

8. Sustained while **occupying** any vehicle while it is:

   a. operating on a surface designed or used for racing, except for an organized and controlled event that is not a speed, performance, stunt or demolition event;

   b. participating in a high performance driving or racing instruction course or school; or

   c. preparing for, practicing for, used in, or competing in any prearranged or organized;

      **(1)** race activity; or

      **(2)** speed, performance, stunt, or demolition contest or exhibition.

**C.** We do not provide coverage for Automobile Medical Payments for **bodily injury** sustained by any **insured** to the extent that benefits are, in whole or in part, paid or payable under any of the following or similar law:

   **1.** Workers compensation law; or

   **2.** Disability Benefits Law.

**Limit of Liability**

**A.** Regardless of the number of **insureds,** policies or bonds applicable, claims made or vehicles to which this coverage applies, the limit of liability for Automobile Medical Payments shown in the Declarations as applicable to "each person" is the limit of our liability for all expenses incurred by or on behalf of each person who sustains **bodily injury** as a result of any one **motor vehicle** accident.

**B.** With respect to **bodily injury** sustained by a **pedestrian** (other than the **insured** or any **family member**) through being struck by **your covered auto,** the limit of our liability shall be the amount shown in the Declarations, or $5,000, whichever is less.

## SECTION II — WORK LOSS COVERAGE

We will pay benefits for **work loss** with respect to **bodily injury** sustained by an **insured** caused by accident arising out of the maintenance or use of a **motor vehicle** as a **motor vehicle.**

**** REPRINTED FROM THE ARCHIVE.  THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

**Definitions**

As used in Section **II:**

**"Insured"** means:

1.  You and any **family member** who sustains **bodily injury** while:

    a.  **occupying**; or

    b.  a **pedestrian** struck by;

    any **motor vehicle.**

2.  Any other person who sustains **bodily injury**:

    a.  while:

        (1)  **occupying**; or

        (2)  a **pedestrian**, through being struck by;

        **your covered auto.**

**"Private passenger motor vehicle"** means a **motor vehicle** which is a:

1.  **private passenger auto**;

2.  pickup, van or motor home not customarily used for:

    a.  occupational;

    b.  professional; or

    c.  **business**;

    purposes, other than farming or ranching.

3.  motorcycle.

However, **private passenger motor vehicle** does not include a **motor vehicle** used as a public or livery conveyance for passengers.

**"Work loss"** means:

1.  If an **insured** is an income earner, loss of income from work that **insured** would have performed had he not sustained **bodily injury.**

2.  If an **insured** is a non-income earner, expenses reasonably incurred in obtaining ordinary and necessary services instead of those that **insured** would have performed, without income and for the benefit of himself or his family, had he not sustained **bodily injury.**

**Work loss** applies only to the period beginning 8 days after the date of the accident and not exceeding 52 weeks. However, **work loss** does not include any loss or expense after the death of an **insured.**

**"Your covered auto"** means a **private passenger auto** which is shown in the Declarations to which this coverage applies and includes a:

1.  **Private passenger auto** not owned by you while used as a temporary substitute for **your covered auto** which is out of normal use because of its:

    a.  breakdown;

    b.  repair;

    c.  servicing;

    d.  loss; or

    e.  destruction.

2.  A **trailer** designed for use with a **private passenger auto** if not being used for **business** purposes with another type vehicle.

**Exclusions**

Exclusions **A.1., A.2., A.3., B.7. and C.** under Section **I** apply to Section **II.**

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

The coverage under Section **II** does not apply to **bodily injury** sustained by:

1. You while **occupying** any **private passenger motor vehicle,** other than **your covered auto** which is owned by you or furnished or available for your regular use.

2. Any **family member** while **occupying** any **private passenger motor vehicle,** other than **your covered auto** which is:

   a. owned by; or

   b. furnished or available for the regular use of;

   you or that **family member.**

3. Any **family member** entitled to similar coverage as a named insured under any other motor vehicle insurance policy which provides benefits equal to or greater than that prescribed by Arkansas House Bill 158, Arkansas Laws 1973.

4. Any **insured** other than you or any **family member** entitled to similar coverage as a named insured under any other motor vehicle insurance policy which provides benefits equal to or greater than that prescribed by Arkansas House Bill 158, Arkansas Laws 1973.

**Limit of Liability**

Regardless of **insureds,** policies or bonds applicable, claims made or vehicles to which this coverage applies, the limit of our liability for **work loss** is limited as follows:

1. 70% of loss of gross income up to a maximum of $140 per week for an income earner.

2. Up to a maximum of $70 per week or pro rata for a lesser period for a non-income earner.

---

### SECTION III — ACCIDENTAL DEATH BENEFIT

We will pay the amount shown in the Declarations if **bodily injury** from the accident causes the death of an **insured** within one year from the date of accident. The **bodily injury** must be the sole cause of death.

**Exclusions**

Exclusions **A.1., A.2., A.3.** and **B.7.** under Section **I** and all exclusions under Section **II** apply to Section **III.**

**PAYMENT OF BENEFITS**

We may pay automobile medical payments or **work loss** to an **insured** or any person or organization rendering the services. Such payment shall reduce the amount payable under this coverage for **bodily injury** sustained by that **insured.**

**OTHER INSURANCE**

**A.** Any insurance we provide for automobile medical payments:

1. With respect to **bodily injury** sustained by any **family member,** shall be excess over any other collectible insurance available to that **family member** as a named insured under another motor vehicle insurance policy providing direct benefits without regard to fault.

2. With respect to **bodily injury** sustained by an **insured,** other than you or any **family member,** shall be excess over any other collectible similar insurance available to that **insured** as a named insured or **family member** under another motor vehicle insurance policy providing direct benefits without regard to fault.

**B.** Except as provided in **A.** above, if there is other similar collectible insurance which provides coverage for automobile medical payments, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

However, we will provide primary insurance for a **motor vehicle** you do not own if:

1. A duly licensed automobile dealer provides a **motor vehicle** to you or a **family member:**

   a. For use as a temporary substitute for any other **your covered auto** while it is out of normal use because of its:

   (1) breakdown;

**** REPRINTED FROM THE ARCHIVE.  THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

      **(2)**  repair; or

      **(3)**  servicing; or

    **b.**  To demonstrate the **motor vehicle;**

  **2.**  The **motor vehicle** is rented or leased to you or any **family member** from a rental company for a period not more than 90 days.

**C.**  No one shall be entitled to recover duplicate payments for medical payments for the same elements of loss.

**D.**  Any insurance we provide for **work loss** or accidental death shall be excess over any other collectible insurance available to:

  **1.**  An **insured,** other than you or any **family member,** under another motor vehicle insurance policy. In this event, our maximum limit of liability will be the amount by which the applicable limit of liability shown in the Declarations exceeds the applicable limits of liability of all other insurance.

  **2.**  You or any **family member** under any other motor vehicle insurance policy. In this event:

    **a.**  the maximum recovery under all policies shall not exceed the highest limit of liability under any one policy;

    **b.**  we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

However, we will provide primary insurance for a motor vehicle you do not own if:

  **1.**  A duly licensed automobile dealer provides a **motor vehicle** to you or a **family member:**

    **a.**  For use as a temporary substitute for any other **your covered auto** while it is out of normal use because of its:

      **(1)**  breakdown

      **(2)**  repair; or

      **(3)**  servicing; or

    **b.**  To demonstrate the **motor vehicle;**

  **2.**  The **motor vehicle** is rented or leased to you or any **family member** from a rental company for a period not more than 90 days.

## PART E — DUTIES AFTER AN ACCIDENT OR LOSS

Part **E** of the policy is amended as follows:

**A.**  Duties **A.** and **B.3.** are replaced by the following:

  **A.**  We must be promptly notified in writing of how, when and where the accident happened. Notice should include the names and addresses of any **insureds** and witnesses.

  **B.**  A person seeking Personal Injury Protection Coverage must:

    **3.**  Submit, as often as we reasonably require, to physical and mental exams by physicians we select. We will pay for these exams.

**B.**  The following duties are added:

A person seeking Personal Injury Protection Coverage must:

  **1.**  Give us written proof of claim, under oath if required. This proof of claim must include:

    **a.**  complete details of the nature and extent of the injuries and treatment received and contemplated; and

    **b.**  any other information which may assist us in determining the amount due and payable.

  **2.**  At our request, furnish us with a sworn statement of earnings for the **insured** since the date of the accident and for a reasonable time before the accident.

  **3.**  Promptly send us copies of:

    **a.**  the summons and complaint; or

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

**b.** other process;

served in connection with any legal action taken, to recover damages for **bodily injury,** against a person or organization who is or may be legally liable.

## PART F — GENERAL PROVISIONS

Part F of the policy is amended as follows:

**A.** The Our Right To Recover Payment provision is amended as follows:

## OUR RIGHT TO RECOVER PAYMENT

**1.** This provision does not apply to accidental death.

**2.** Paragraph **A.** of the provision is replaced by the following with respect to this coverage:

If we make a payment under this coverage and the person to or for whom payment was made has a right to recover damages from another, that person shall:

**a.** hold in trust for us such rights of recovery;

**b.** do nothing after loss to prejudice them;

**c.** do whatever is necessary to secure these rights; and

**d.** execute and deliver to us any instruments and papers as may be appropriate to secure that person's and our rights.

**3.** The following is added to Paragraph **B:**

We will have a lien against the proceeds of the recovery. We may give notice of the lien to:

**a.** the person or organization causing **bodily injury;**

**b.** that person's agent or insurer; or

**c.** a court having jurisdiction in the matter.

**4.** We shall be entitled to recovery under Paragraph **A.** or **B.** of this provision only after the person has been fully compensated for damages.

**B.** Paragraph **C.** of the Policy Period and Territory provision is replaced by the following:

## POLICY PERIOD AND TERRITORY

**C.** The policy territory is:

**1.** The United States of America, its territories and possessions; or

**2.** Canada.

---

## PART C — UNINSURED/UNDERINSURED MOTORISTS COVERAGE

---

## INSURING AGREEMENT

**A.** We will pay damages which an **insured** is legally entitled to recover from the owner or operator of an:

**1.** **Uninsured motor vehicle** or **underinsured motor vehicle** because of **bodily injury:**

**a.** sustained by that **insured;** and

**b.** caused by an accident.

**2.** **Uninsured motor vehicle** because of **property damage** caused by an accident if the Declarations indicate that Uninsured Motorists Property Damage Coverage applies.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **uninsured motor vehicle** or **underinsured motor vehicle.**

We will pay damages under Underinsured Motorists Coverage only if **1.** or **2.** below applies:

**1.** The limits of liability under any applicable bodily injury liability bonds or polices have been exhausted by payments or judgments or settlements; or

**** REPRINTED FROM THE ARCHIVE.  THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

2. A tentative settlement has been made between an **insured** and the insurer of the **underinsured motor vehicle** and we:

   a. have been given prompt written notice by certified mail, return receipt requested, of such tentative settlement. Such notice shall include written:

      **(1)** documentation of pecuniary losses incurred, including copies of all medical bills;

      **(2)** authorization or a court order authorizing the insurer of the **underinsured motor vehicle** to obtain medical reports from all employers and medical providers; and

      **(3)** confirmation of both the tentative settlement and certification of the Liability Coverage limits of the owner or operator of the **underinsured motor vehicle**: and

   b. advance payment to the **insured** in an amount equal to the tentative settlement within 30 days after receipt of notification.

With respect to Uninsured Motorists Coverage, any judgment for damages arising out of a suit brought without our written consent is not binding on us.

**B.** **"Insured"** as used in this Part means:

   1. You or any **family member.**

   2. Any Rated Driver shown on the Declarations other than you or a **family member.**

   3. Any other person **occupying your covered auto** with your express or implied permission. The actual use must be within the scope of that permission.

   4. Any person entitled to recover damages because of **bodily injury** to which this coverage applies sustained by a person described in **B.1., B.2.** or **B.3.** above.

**C.** **"Property damage"** as used in this Part means physical injury to or destruction of **your covered auto** including loss of use.

**D.** **"Underinsured motor vehicle"** means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is not enough to pay the full amount the **insured** is legally entitled to recover as damages.

However, **"underinsured motor vehicle"** does not include any vehicle or equipment:

   1. Owned by or furnished or available for the regular use of you, any **family member** or any other rated driver listed in the Declarations.

   2. Owned by any governmental unit or agency.

   3. Operated on rails or crawler treads.

   4. Designed mainly for use off public roads while not upon public roads.

   5. While located for use as a residence or premises.

   6. To which a bodily injury liability bond or policy applies at the time of the accident if its limit for liability is less than the minimum limit for bodily injury liability specified by the Arkansas financial responsibility law.

**E.** **"Uninsured motor vehicle"** means a land motor vehicle or trailer of any type:

   1. To which no liability bond or policy applies at the time of the accident.

   2. To which a liability bond or policy applies at the time of the accident if its limit for bodily injury liability is less than the **minimum limits** for bodily injury liability specified by the Arkansas financial responsibility law.

   3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:

      a. you, any **family member** or any other rated driver listed in the Declarations:

      b. a vehicle which you, any **family member** or any other rated driver listed in the Declarations are **occupying; or**

      c. **your covered auto.**

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

4.  To which a liability bond or policy applies at the time of the accident, but the bonding or insuring company:

    a.  denies coverage; or

    b.  is or becomes insolvent.

However, **"uninsured motor vehicle"** does not include any vehicle or equipment:

1.  Owned by or furnished or available for the regular use of you, any **family member** or any other rated driver listed in the Declarations.

2.  Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

3.  Owned by any governmental unit or agency.

4.  Operated on rails or crawler treads.

5.  Designed mainly for use off public roads while not on public roads.

6.  While located for use as a residence or premises.

## EXCLUSIONS

A.  We do not provide Uninsured/Underinsured Motorists Coverage for **bodily injury** or **property damage** sustained:

1.  By an **insured** while **occupying,** or when struck by, any **motor vehicle** owned by that **insured** which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2.  By any **family member** while **occupying,** or when struck by, any **motor vehicle** you own which is insured for this coverage on a primary basis under any other policy.

B.  We do not provide Uninsured/Underinsured Motorists Coverage for **bodily injury** or **property damage** sustained by any **insured:**

1.  If that **insured** or the legal representative settles the **bodily injury** or **property damage** claim without our consent.

2.  While **occupying your covered auto** when it is being used as a public or livery conveyance. This exclusion **(B.2.)** does not apply to a share-the-expense car pool.

3.  While using any vehicle while employed in the pickup or delivery of newspapers or magazines, food or any products for the purpose of compensation. This exclusion does not apply to delivery that is incidental to an **insured's business.**

4.  While using a vehicle without the express or implied permission of the owner or other person having lawful possession, or using a vehicle beyond the scope of the permission granted. However, this exclusion does not apply to you, any **family member** or any other rated driver listed in the Declarations using **your covered auto.**

5.  While **occupying** or operating an owned motorcycle or moped.

6.  For the first $200 of the amount of **property damage** to **your covered auto.** This exclusion does not apply if:

    a.  we insure **your covered auto** for both Collision Coverage and Uninsured Motorists Property Damage Coverage; and

    b.  the operator of the **uninsured motor vehicle** is positively identified and is solely at fault.

7.  While using any vehicle while it is:

    a.  operating on a surface designed or used for racing except for an organized and controlled event that is not a speed, performance, stunt or demolition event;

    b.  participating in a high performance driving or racing instruction course or school; or

    c.  preparing for, practicing for, used in, or competing in any prearranged or organized:

        (1)  race activity; or

        (2)  speed, performance, stunt, or demolition contest or exhibition.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

**C.** This coverage shall not apply directly or indirectly to benefit:

    **1.** Any insurer or self-insurer under any of the following or similar law:

        **a.** workers compensation law; or

        **b.** disability benefits law.

    **2.** Any insurer of property.

**D.** We do not provide Uninsured/Underinsured Motorists Coverage for **punitive or exemplary damages.**

**E.** No payment will be made for loss paid or payable to the **insured** under Part D of the policy.

## LIMIT OF LIABILITY

**A.** The limit of liability shown in the Declarations for "each person" for Uninsured/Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care and loss of services (including loss of consortium and wrongful death), arising out of **bodily injury** sustained by any one person in any one auto accident.

Subject to this limit for "each person", the limit of liability shown in the Declarations for "each accident" for Uninsured/Underinsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury** resulting from any one auto accident.

The limit of liability for Uninsured Motorists Property Damage Coverage stated in the Declarations is the total limit of our liability for all damages because of **property damage** to all property of one or more **insureds** as the result of any one accident.

This is the most we will pay regardless of the number of:

    **1. Insureds;**

    **2.** Claims made;

    **3.** Vehicles or premiums shown in the Declarations; or

    **4.** Vehicles involved in the accident.

In no event shall the limit of liability for two or more vehicles or two or more policies be added together, combined, or stacked to determine the limit of liability available to injured persons.

**B.** If the Declarations indicate Combined Single Limit Coverage applies, paragraph **(A.)** above is replaced by the following:

The limit of liability shown in the Declarations for Uninsured/Underinsured Motorists Coverage is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of:

    **1. Insureds;**

    **2.** Claims made;

    **3.** Vehicles or premiums shown in the Declarations; or

    **4.** Vehicles involved in the auto accident.

We will apply the limit of liability to provide any separate limits required by law for **bodily injury** and **property damage** liability. However, this provision will not change our total limit of liability.

In no event shall the limit of liability for two or more vehicles or two or more policies be added together, combined, or stacked to determine the limit of liability available to injured persons.

**C.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part **A** or Part **B** of this policy.

**D.** We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

**E.** We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

    **1.** Workers compensation law; or

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

    **2.**  Disability benefits or occupational disease laws.

**F.**  A vehicle and attached **trailer** are considered one vehicle. Therefore the limits of liability will not be increased for an accident involving a vehicle which has an attached **trailer.**

## OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part of the policy:

    **1.**  Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

    **2.**  Any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for **your covered auto,** shall be excess over any collectible insurance.

    **3.**  If the coverage under this policy is provided:

        **a.**  on a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

        **b.**  on an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

However, we will provide primary insurance for a vehicle you do not own if:

    **1.**  A duly licensed automobile dealer provides a vehicle to you or a **family member:**

        **a.**  for use as a temporary substitute while **your covered auto** is out of normal use because of its breakdown, repair or servicing; or

        **b.**  to demonstrate the vehicle;

    **2.**  The vehicle is rented or leased to you or any **family member** from rental company for a period not more than 90 days.

Underinsured Motorists Coverage shall be excess over all bodily injury bonds and insurance policies applicable at the time of the accident.

## ARBITRATION

**A.**  If we and an **insured** do not agree:

    **1.**  Whether that **insured** is legally entitled to recover damages; or

    **2.**  As to the amount of damages which are recoverable by that **insured;**

    from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle** then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

    Both parties must voluntarily agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

**B.**  Any decision of the arbitrators will not be binding on either party.

**C.**  Each party will:

    **1.**  Pay the expenses it incurs; and

    **2.**  Bear the expenses of the third arbitrator equally.

**D.**  Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to procedure and evidence will apply.

## ADDITIONAL DUTIES

**A.**  A person seeking coverage under this Uninsured/Underinsured Motorists Coverage must promptly send us copies of the legal papers if a suit is brought.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

**B.** A person seeking coverage for Underinsured Motorists Coverage must promptly notify us in writing by certified mail, return receipt requested, of a tentative settlement between the **insured** and the insurer of the **underinsured motor vehicle** and allow us 30 days to advance payment to that **insured** in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such **underinsured motor vehicle.**

Notice of a tentative settlement must include written:

**1.** Documentation of monetary losses incurred, including copies of all medical bills;

**2.** Authorization or a court order authorizing us to obtain medical reports from all employers and medical providers; and

**3.** Confirmation from the insurer of the **underinsured motor vehicle** of the Liability Coverage limits of the owner or operator of the **underinsured motor vehicle.**

**C.** In the event we insure you and the owner or operator of the **underinsured motor vehicle,** the requirements of **A.** and **B.** of this section are waived. You may begin proceedings seeking Underinsured Motorists Coverage, at any time after settlement has been reached under the underinsured motorist's Liability Coverage.

---

## PART D — COVERAGE FOR DAMAGE TO YOUR AUTO

---

### INSURING AGREEMENT

**A.** We will pay for direct and accidental loss to **your covered auto** or any **non-owned auto,** including its equipment, any child safety seat in use in **your covered auto** or **non-owned auto,** minus any applicable deductible shown in the Declarations. We will pay for loss to **your covered auto** caused by:

**1.** Other than **collision** only if the Declarations indicate that Comprehensive Coverage is provided for that auto.

**2.** **Collision** only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a **non-owned auto,** we will provide the broadest coverage applicable to any vehicle shown in the Declarations.

**B.** "Collision" means the upset of **your covered auto** or a **non-owned auto** or its impact with another vehicle or object. No deductible will apply if the **collision** is with another auto insured by a Safeco insurance company.

"Comprehensive" means loss, other than **collision,** to **your covered auto** or a **non-owned auto.** Losses caused by the following are not **collision** losses but are **comprehensive** losses:

Loss caused by missiles or falling objects; fire; theft or larceny; explosion or earthquake; windstorm; hail, water or flood; malicious mischief or vandalism; riot or civil commotion; contact with a bird or animal; or breakage of glass.

If breakage of glass is caused by a **collision,** you may elect to have it considered a loss caused by **collision.**

**C.** **1.** "Non-owned auto" means:

**a.** Any private passenger auto, pickup, van (other than cargo van) or **trailer** with a Gross Vehicle Weight rating of 12,000 pounds or less or any cargo van or moving van with a Gross Vehicle Weight Rating of 18,000 pounds or less, not owned by or furnished or available for the regular use of you or any **family member** while in the custody of or being operated by you or any **family member.**

**b.** Any auto or **trailer** you do not own while used as a temporary substitute for **your covered auto** which is out of normal use because of its:

**(1)** breakdown;

**(2)** repair;

**(3)** servicing;

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

    **(4)** loss; or

    **(5)** destruction.

**2.** However, **non-owned auto** does not include any vehicle which has been operated or rented by or in the possession of you or any **family member** for 30 or more consecutive days. This does not apply to a temporary substitute vehicle authorized by us.

**D.** **"Camper body"** means a body equipped as sleeping or living quarters which is designed to be mounted on a pickup.

## DEDUCTIBLE

Unless stated otherwise, the applicable deductible shown in the Declarations shall be applied to each accidental loss covered under this Part of the policy. However,

    **1.** if loss to more than one of **your covered autos** or a **non-owned auto** results from the same loss, only the highest applicable deductible will apply;

    **2.** In the event of a **collision** with another vehicle insured by:

        **a.** a Safeco insurance company; or

        **b.** another Liberty Mutual Agency Corporation company;

    no deductible will apply.

    This does not include a vehicle described as **your covered auto** or **non-owned auto.**

    **3.** no deductible will apply to **your covered auto** or a **non-owned auto** if the loss to **your covered auto** or a **non-owned auto** results from the same event as a loss covered under your Safeco Homeowners or Condominium policy and we issue a payment under your Homeowners or Condominium policy for the loss.

## TRANSPORTATION EXPENSES

**A.** Subject to the limitations described in paragraphs **B.** and **C.,** below, we will pay:

    **1.** Temporary transportation expenses incurred by you in the event of the total theft of **your covered auto** or a **non-owned auto.** We will pay for such expenses only if the Declarations indicate that Comprehensive Coverage is provided for that auto. We will pay only expenses incurred during the period:

        **a.** beginning 48 hours after the theft; and

        **b.** ending when **your covered auto** or the **non-owned auto** is returned to use or we pay for its loss.

    **2.** Indirect loss expenses for which you become legally responsible in the event of a loss to a **non-owned auto.** We will pay only expenses beginning when the **non-owned auto** is withdrawn from use for more than 24 hours. We will pay for indirect loss expenses if the loss is caused by:

        **a.** a **comprehensive** loss only if the Declarations indicate that Comprehensive Coverage is provided for any **your covered auto.**

        **b.** **collision** only if the Declarations indicate that Collision Coverage is provided for any **your covered auto.**

**B.** For the expenses described in paragraphs **A.1.** and **A.2.** we will pay the greater of the following, without application of a deductible:

    **1.** Up to $20 per day, to a maximum of $600; or

    **2.** The limit for Loss of Use, if any, shown in the Declarations.

**C.** Our payment for the expenses described in paragraphs **A.1.** and **A.2.** will be limited to that period of time reasonably required to repair or replace the **your covered auto** or the **non-owned auto.**

## EXCLUSIONS

We will not pay for:

    **1.** Loss to **your covered auto** or any **non-owned auto** which occurs while it is being used as a public or livery conveyance. This exclusion **(1.)** does not apply to a share-the-expense car pool.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

2. Loss to **your covered auto** or any **non-owned auto** while employed in the pickup or delivery of newspapers or magazines, food or any products for the purpose of compensation. This exclusion does not apply to delivery that is incidental to an **insured's business.**

3. Damage or loss due and confined to:

    a. wear and tear;

    b. freezing;

    c. mechanical or electrical breakdown or failure; or

    d. road damage to tires.

    This exclusion **(3.)** does not apply if the damage results from the total theft of **your covered auto** or any **non-owned auto.**

4. Damage or loss arising out of neglect. Neglect means your failure to adequately maintain **your covered auto** or **non-owned auto** after the loss.

    With respect to water under Comprehensive Coverage, there is no coverage for:

    a. moisture, condensation, humidity, or vapor;

    b. water intrusion around or through panels, surfaces and seals; or

    c. water that collects in spaces or ventilation systems; or

    d. **fungi,** dry rot or bacteria;

    resulting from neglect.

5. Loss due to or as a consequence of:

    a. discharge of any nuclear weapon (even if accidental);

    b. war (declared or undeclared);

    c. civil war;

    d. insurrection; or

    e. rebellion or revolution.

6. Loss from or as a consequence of the following, whether controlled or uncontrolled or however caused:

    a. nuclear reaction;

    b. radiation; or

    c. radioactive contamination.

7. Loss to:

    a. any electronic equipment designed for the production or reproduction of sound, pictures, audio, visual or data or that receives or transmits sound, pictures or data signals.

    b. This exclusion **(7.)** does not apply to:

        (1) equipment designed for the reproduction of sound or transmission of sound, pictures, audio, visual or data signals and accessories used with such equipment, provided:

            (a) the electronic equipment is permanently installed by the original vehicle manufacturer or manufacturer's dealership in **your covered auto** or any **non-owned auto;** or

            (b) the electronic equipment is:

                i. removable from a housing unit which is permanently installed by the original vehicle manufacturer or manufacturer's dealership in the auto;

                ii. designed to be solely operated by use of the power from the auto's electrical system; and

                iii. in or upon **your covered auto** or any **non-owned auto;**

                at the time of loss.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

   **(c)**  any equipment installed through our Teensurance™ program.

However, we will pay only up to a total of $500 or the actual cash value of **your covered auto** or any **non-owned auto,** whichever is less, for all such equipment that is not installed by the original vehicle manufacturer or manufacturer's dealership.

   **(2)**  any other electronic equipment that is:

     **(a)**  necessary for the normal operation of the auto or the monitoring of the auto's operating systems;

     **(b)**  an integral part of the same unit housing any electronic equipment described in **7.a.** and permanently installed by the original vehicle manufacturer or manufacturer's dealership in **your covered auto** or any **non-owned auto.**

**8.** Loss to:

  **a.**  tapes, records, discs, or other media used with such equipment described in exclusion **(7.);** or

  **b.**  any other accessories, not permanently installed used with such equipment described in exclusion **(7.).**

**9.** Loss to **your covered auto** or any **non-owned auto** due to destruction or confiscation by governmental or civil authorities because you or any **family member:**

  **a.**  engaged in illegal activities; or

  **b.**  failed to comply with Environmental Protection Agency or Department of Transportation standards.

This exclusion **(9.)** does not apply to the interests of Loss Payees in **your covered auto.**

**10.** Loss to a **camper body,** motorhome or **trailer** you own which is not shown in the Declarations. This exclusion **(10.)** does not apply to a **camper body,** motorhome or **trailer** you:

  **a.**  acquire during the policy period; and

  **b.**  ask us to insure within 30 days after you become the owner.

**11.** Loss to any **non-owned auto** when used by you or any **family member** without the express or implied permission of the owner or other person having lawful possession, or using a vehicle beyond the scope of the permission granted.

**12.** Loss to equipment, whether operational or not, whose design may be used for the detection or location of law enforcement equipment.

**13.** Loss to any **non-owned auto** being maintained or used by any person while employed or otherwise engaged in the **business** of:

  **a.**  selling;

  **b.**  repairing;

  **c.**  servicing;

  **d.**  storing; or

  **e.**  parking;

vehicles designed for use on public highways. This includes road testing and delivery.

**14.** Loss to any **non-owned auto** being maintained or used by any person while employed or otherwise engaged in any **business** not described in exclusion **2.** and **13.** This exclusion **(14.)** does not apply to the maintenance or use by you or any **family member** of a **non-owned auto** which is a private passenger auto or **trailer.**

**15.** Loss to **your covered auto** or any **non-owned auto** while it is:

  **a.**  operating on a surface designed or used for racing. This does not apply to an organized and controlled event that is not a speed, performance, stunt or demolition event;

  **b.**  participating in a high performance driving or racing instruction course or school; or

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

   **c.** preparing for, practicing for, used in, or competing in any prearranged or organized:

      **(1)** race activity; or

      **(2)** speed, performance, stunt, or demolition contest or exhibition.

**16.** Loss to, or loss of use of, a **non-owned auto** rented by:

   **a.** you; or

   **b.** any **family member;**

if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that **family member,** pursuant to the provisions of any applicable rental agreement or state law.

**17.** Loss to **your covered auto** or any **non-owned auto,** that is not the result of a covered loss under this policy, arising out of the actual, alleged or threatened presence, growth, proliferation or spread of **fungi,** dry rot or bacteria. We will not pay for remedial costs, such as the cost of testing **your covered auto** or any **non-owned auto** for mold, or the costs of containment or fumigation of **your covered auto,** whether or not the mold is the result of a covered loss.

**18.** Loss to **your covered auto, non-owned auto,** or **trailer,** for **diminution in value.**

**19.** Loss in excess of $500 per claim or the actual cash value of **your covered auto** or any **non-owned auto,** whichever is less, for any furnishings or equipment that were not installed by the original vehicle manufacturer or manufacturer's dealership which mechanically or structurally changes your vehicle and results in increase in performance or change in appearance, including but not limited to:

   **a.** custom murals, paintings or other decals or graphics;

   **b.** custom wheels, tachometers, pressure and temperature gauges;

   **c.** modified or custom engines and fuel systems, light bars, racing slicks and/or oversized tires, roll bars and lift kits, winches, utility boxes, and tool boxes; or

   **d.** non-standard paint.

This exclusion does not apply to equipment installed to make a vehicle handicap accessible.

**20.** Loss arising out of the use of **your covered auto** while leased or rented to others.

**21.** Loss to **your covered auto** or a **non-owned auto** caused by an intentional act by you or a **family member,** or at the direction of you or a **family member.**

## LIMIT OF LIABILITY

**A.** At our option, our limit of liability for loss will be the lowest of:

   **1.** The actual cash value of the stolen or damaged property;

   **2.**  **a.** The amount necessary to repair or replace the property;

      **b.** Determination of the cost of repair or replacement will be based upon one of the following:

         **(1)** the cost of repair or replacement agreed upon by you and us;

         **(2)** a competitive bid approved by us; or

         **(3)** an estimate written based upon the prevailing competitive price. You agree with us that we may include in the estimate parts furnished by the original vehicle manufacturer or parts from other sources including non-original equipment manufacturers. The prevailing competitive price means prices charged by a majority of the repair market in the area where the vehicle is to be repaired as determined by us; or

   **3.** The limit of liability shown in the Declarations.

However, the most we will pay for loss to any **non-owned auto,** which is a **trailer,** is $1,500.

**B.** An adjustment for depreciation and physical condition may be made based upon the physical condition and wear and tear of the property or damaged part of the property at the time of the loss. This adjustment for physical condition includes but is not limited to, broken, cracked or missing parts, rust, dents, scrapes, gouges and paint condition. When replacing parts normally subject to repair or replacement during the useful life of the vehicle, we will not pay for the amount of any betterment.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. You; or

2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property. However, if the loss is a total loss to **your covered auto** or any **non-owned auto** and we elect either to pay for loss in money or offer a comparable replacement vehicle, our payment for loss will include, other than payment for any applicable deductible shown in the Declarations, all:

1. Applicable taxes;

2. License fees; and

3. Other fees;

actually incurred incident to transfer of evidence of ownership of a comparable replacement vehicle.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a **non-owned auto** shall be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the **non-owned auto;**

2. Any other applicable physical damage insurance;

3. Any other source of recovery applicable to the loss.

However, we will provide primary insurance for a vehicle you do not own if:

1. A duly licensed automobile dealer provides a vehicle to you or a **family member:**

    a. for use as a temporary substitute for **your covered auto** while it is out of normal use because of its breakdown, repair or servicing; or

    b. to demonstrate the vehicle;

2. The vehicle is rented or leased to you or any **family member** from a rental company for a period not more than 90 days.

## APPRAISAL

A.  If we and you do not agree on the amount of loss, an appraisal of the loss may be made. However, an appraisal will be made only if both we and you agree, voluntarily, to have the loss appraised. If so agreed, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will not be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

B.  We do not waive any of our rights under this policy by agreeing to an appraisal.

## ELIMINATION OF COLLISION DEDUCTIBLE

When there is a loss to **your covered auto** insured for Collision Coverage, no deductible will apply if:

1. We also insure that auto for Uninsured Motorists Property Damage Coverage.

2. The loss is caused by an **uninsured motor vehicle,** as that term is defined in Part **C** of this policy.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

3.   The operator of such **uninsured motor vehicle** has been positively identified and is solely at fault.

## PART E — DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**A.**   We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

**B.**   A person seeking any coverage must:

1.   Cooperate with us in the investigation, settlement or defense of any claim or suit.

2.   Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3.   Submit, as often as we reasonably require:

   **a.**   to physical examinations by physicians we select. We will pay for these exams.

   **b.**   to examination under oath and subscribe the same. We may examine any **insured** separately and apart from the presence of any other **insured.**

4.   Authorize us to obtain:

   **a.**   medical reports; and

   **b.**   other pertinent records.

5.   Submit a proof of loss, under oath if requested, when required by us.

**C.**   A person seeking Uninsured/Underinsured Motorists Coverage must also:

1.   Report the accident to the police or other civil authority within twenty-four (24) hours or as soon as practicable if a hit-and-run driver is involved.

2.   Promptly send us copies of the legal papers if a suit is brought.

3.   Promptly notify us in writing of a tentative settlement between the **insured** and the insurer of an **underinsured motor vehicle**. Such notice shall include written:

   **a.**   documentation of pecuniary losses incurred, including copies of all medical bills;

   **b.**   authorization or a court order authorizing the insurer of the **underinsured motor vehicle** to obtain medical reports from all employers and medical providers; and

   **c.**   confirmation of both the tentative settlement and certification of the Liability Coverage limits of the owner or operator of the **underinsured motor vehicle.**

4.   Allow us 30 days to advance payment to that **insured** in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of the **underinsured motor vehicle.**

**D.**   A person seeking Coverage for Damage to Your Auto must also:

1.   Take reasonable steps after loss to protect **your covered auto** or any **non-owned auto** and its equipment from further loss. We will pay reasonable expenses incurred to do this.

2.   Promptly notify the police if **your covered auto** or any **non-owned auto** is stolen.

3.   Permit us to inspect and appraise the damaged property before its repair or disposal.

## PART F — GENERAL PROVISIONS

### POLICY PERIOD AND TERRITORY

**A.**   This policy applies only to accidents and losses which occur:

1.   During the policy period as shown in the Declarations; and

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

    **2.** Within the policy territory.

**B.** The policy period is the period stated in the Declarations. The policy may be renewed for successive policy periods if the required premium is paid and accepted by us on or before the expiration of the current policy period. The premium will be computed at our then current rate for coverage then offered.

**C.** The policy territory is:

    **1.** The United States of America, its territories or possessions;

    **2.** Puerto Rico; or

    **3.** Canada.

    This policy also applies to loss to, or accidents involving, **your covered auto** while being transported between their ports.

## BANKRUPTCY

Bankruptcy or insolvency of the **insured** shall not relieve us of any obligations under this policy.

## CHANGES

**A.** This policy, your Declarations page and endorsements issued by us to this policy contain all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

**B.** The premium for your policy is based on information we have received from you or other sources. You agree to cooperate with us in determining if this information is correct and complete and you will notify us if it changes. If this information is incorrect, incomplete, or changes, we will adjust your premium during the policy term or take other appropriate action based upon the corrected, completed or changed information. Changes during the policy term that will result in a premium increase or decrease during the policy term include, but are not limited to, changes in:

    **1.** The number, type or use classification of insured vehicles.

    **2.** Operators using insured vehicles including newly licensed **family member** drivers and any household members that have licenses.

    **3.** The location where your vehicle is principally garaged.

    **4.** Customized equipment or parts.

    You also agree to disclose all licensed drivers residing in the household.

**C.** If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This paragraph **(C.)** does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

    **1.** A subsequent edition of your policy; or

    **2.** An Amendatory Endorsement.

**D.** Additional or return premium of $3.00 or less resulting from policy changes will be waived.

## PAYMENT OF PREMIUM

If your initial premium payment is by check, draft or any remittance other than cash, coverage under this policy is conditioned upon the check, draft or remittance being honored upon presentment to the bank or other financial institution. If the check, draft or remittance is not honored upon presentment, this policy may, at our option, be deemed void from its inception. This means that we will not be liable under this policy for any claims or damages which would otherwise be covered if the check, draft, or remittance had been honored upon presentment.

## FRAUD

This policy was issued in reliance upon the information provided on your application. We may void this policy if you or an **insured** have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, at the time application was made or any time during the policy period.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

We may void this policy or deny coverage for an accident or loss if you or an **insured** have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

We may void this policy or deny coverage for fraud or material misrepresentation even after the occurrence of an accident or loss. This means we will not be liable for any claims or damages which would otherwise be covered. If we make a payment, we may request that you reimburse us. If so requested, you must reimburse us for any payments we may have already made.

This provision does not apply to **Part A — Liability Coverage.**

**LEGAL ACTION AGAINST US**

**A.** No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part **A,** no legal action may be brought against us until:

    **1.** We agree in writing that the **insured** has a legal obligation to pay damages; or

    **2.** The amount of that obligation has been finally determined by judgment after trial.

**B.** No person or organization has any right under this policy to bring us into any action to determine the legal liability of an **insured.**

**OUR RIGHT TO RECOVER PAYMENT**

**A.** If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another person, entity or organization we shall be subrogated to that right. That person shall:

    **1.** Do whatever is necessary to enable us to exercise our rights; and

    **2.** Do nothing after loss to prejudice them.

    However, our rights in this paragraph **(A.)** do not apply under Part **D,** against any person using **your covered auto** with your express or implied permission or other person having lawful possession and is not using a vehicle beyond the scope of the permission granted.

    We shall not use that right if the person against whom it may be asserted is an **insured** under Part **A** of this policy.

**B.** If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

    **1.** Hold in trust for us the proceeds of the recovery; and

    **2.** Reimburse us to the extent of our payment.

**C.** We shall be entitled to recovery under Paragraph **A.** or **B.** only after the person has been fully compensated for damages.

**D.** **1.** Our rights do not apply under paragraph **A.** with respect to Underinsured Motorists Coverage if:

        **a.** We have been given prompt written notice by certified mail, return receipt requested of a tentative settlement between an **insured** and the insurer of an **underinsured motor vehicle;** and

        **b.** We fail to advance payment to the **insured** in an amount equal to the tentative settlement within 30 days after receipt of notification.

    **2.** If we advance payment to the **insured** in an amount equal to the tentative settlement within 30 days after receipt of notification:

        **a.** That payment will be separate from any amount the **insured** is entitled to recover under the provisions of Underinsured Motorists Coverage; and

        **b.** We also have a right to recover the advanced payment.

    However, no notice of a tentative settlement is required if the **underinsured motor vehicle** is insured by us for liability coverage.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

**TERMINATION**

A. **Cancellation.** This policy may be canceled during the policy period as follows:

    1.   The named insured shown in the Declarations may cancel by:

        a.   returning this policy to us; or

        b.   giving us advance written or verbal notice of the date cancellation is to take effect. We may waive the requirement the notice be in writing by confirming the date and time of cancellation to you in writing.

    2.   We may cancel by mailing notice to you at the address shown in this policy:

        a.   at least 10 days before cancellation date if cancellation is for nonpayment of premium; or

        b.   at least 20 days notice in all other cases.

    3.   After this policy is in effect for 60 days we will cancel only:

        a.   for nonpayment of premium; or

        b.   for fraud or material misrepresentation concerning the policy or **insureds.**

        c.   if your driver's license or that of:

            **(1)**  any driver who lives with you; or

            **(2)**  any driver who customarily uses **your covered auto;**

            has been suspended or revoked. This must have occurred:

            **(1)**  during the policy period; or

            **(2)**  since the last anniversary of the original effective date if the policy period is other than one year.

            However, we may not cancel under paragraph **A.3.c.** solely because of the administrative suspension or revocation of the **insured's** driver's license due to the influence or use of alcohol or a controlled substance as set forth in ARK. CODE ANN. Section 5-65-104; or

        d.   You or any driver of **your covered auto** are convicted of:

            **(1)**  driving while intoxicated;

            **(2)**  homicide or assault arising out of the use of a motor vehicle; or

            **(3)**  three (3) separate convictions of speeding or reckless driving, or any combination of the two during the policy period, including three (3) months prior to the effective date of the policy.

B. **Nonrenewal.** If we decide not to renew this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 30 days before the end of the policy period.

C. **Automatic Termination.** If we offer to renew and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal premium when due shall mean that you have not accepted our offer.

    Coverage for **your covered auto** shall automatically terminate on the effective date of any other motor vehicle insurance policy covering that vehicle.

D. **Other Termination Provisions.**

    1.   If the law in effect in your state at the time this policy is issued or renewed:

        a.   requires a longer notice period;

        b.   requires a special form of or procedure for giving notice; or

        c.   modifies any of the stated termination reasons;

        we will comply with those requirements.

    2.   We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

3.  If this policy is canceled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed on a pro rata basis.

    However, making or offering to make the refund is not a condition of cancellation.

4.  The effective date of cancellation stated in the notice shall become the end of the policy period.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

A.  Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1.  The surviving spouse, civil partner or domestic partner if resident in the same household at the time of death. Coverage applies to the spouse, civil partner or domestic partner as if a named insured shown in the Declarations; and

2.  The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use **your covered auto.**

B.  Coverage will only be provided until the end of the policy period.

## TWO OR MORE AUTOS INSURED; TWO OR MORE AUTO POLICIES

If this policy insures two or more autos or if any other auto insurance policy issued to you by us applies to the same accident, the maximum limit of our liability shall not exceed the highest limit applicable to any one auto. In no event shall the limit of liability of two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available to you or any **insured.**

## LOSS PAYABLE CLAUSE

As to the interest of the loss payee, this policy will remain in effect from the inception date and until ten days after proof of mailing that the cancellation notice has been mailed to the loss payee. When we pay the loss payee we shall, to the extent of payment, have the loss payee's rights of recovery.

Where fraud, misrepresentation, material omission, or intentional damage has been committed by or at the direction of any **insured,** or where the loss is otherwise not covered under the terms of the policy, the loss payee or lienholder's interest will not be protected.

## STORAGE COSTS

If you give us your consent, we may move the damaged property, at our expense, to reduce storage costs during the claims process. If you do not give us your consent, we will pay only the storage costs which would have resulted if we had moved the damaged property.

## NAMED DRIVER EXCLUSION

If there is an excluded driver under this policy, then we will not provide coverage for any claim arising from an accident or loss involving a **motor vehicle** being operated by that excluded person. This includes any claim for damages made against you or any **family member** or any other person or organization that is vicariously liable for an accident arising out of the operation of a **motor vehicle** by the excluded driver.

---

# ADDITIONAL COVERAGES

---

**AGREEMENT: WE WILL PROVIDE THE INSURANCE DESCRIBED IN EACH OF THE FOLLOWING ADDITIONAL COVERAGES ONLY IF INDICATED IN THE DECLARATIONS.**

---

## ROADSIDE ASSISTANCE COVERAGE CALL 1-877-ROAD 101 (1-877-762-3101)

**"Your covered auto"** as used in this endorsement means a private passenger vehicle, motor home or **trailer** owned by you and for which a specific premium is shown on the Declarations for this coverage.

The following coverages apply to each vehicle for which this coverage is shown on the Policy Declarations:

1.  Each time **your covered auto** or any **non-owned auto** is disabled due to mechanical or electrical breakdown we will pay reasonable and necessary expenses for the use of an **authorized service**

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

**provider** to tow or flatbed **your covered auto** or **non-owned auto** up to 15 miles or to the nearest qualified place where necessary repairs can be made during regular **business** hours.

2. Each time **your covered auto** or any **non-owned auto** is disabled requiring:

    **a.** Towing to dislodge the vehicle from its place of disablement within 100 feet of a public street or highway; or

    **b.** Labor, including change of tire, at the place of its breakdown; or

    **c.** Delivery of fuel, oil, water or other fluids (we do not pay the costs of these items); or

    **d.** Key lock-out services;

    we will cover up to one (1) hour of labor for the use of an **authorized service provider** for service at the place of disablement.

3. For policies with a 6 month policy term, coverage is limited to no more than two occurrences per vehicle plus an additional two occurrences per policy in a 6 month policy period for both coverages **1.** and **2.**, above.

4. For policies with an annual policy term, coverage is limited to no more than four occurrences per vehicle plus an additional four occurrences per policy in a 12 month policy period for both coverages **1.** and **2.** above.

**Authorized service provider** means a service provider contracted by us providing, at no charge to you, roadside assistance as described and limited above.

When service is provided by other than an **authorized service provider,** we will reimburse you only for reasonable charges as determined by us.

No deductible applies to this coverage.

## LOSS OF USE COVERAGE

The provisions and exclusions that apply to Part **D** — Coverage for Damage to Your Auto also apply to this coverage except as changed below:

When there is a loss to any vehicle described in the Declarations for which a specific premium charge indicates that Loss of Use Coverage is afforded, we will reimburse you for expenses you incur to rent a substitute vehicle.

This coverage applies only if:

1. The vehicle is withdrawn from use for more than 24 hours;

2. The loss is caused by **collision,** or is covered by the Comprehensive Coverage of this policy; and

3. The loss exceeds the appropriate **collision** or **comprehensive** deductible applying to the vehicle.

However, this coverage does not apply to losses caused by **collision** if Collision Coverage does not apply to the vehicle.

Our payment will be limited to that period of time reasonably required to repair or replace the vehicle. We will pay up to the amount per day and the maximum shown for Loss of Use in the Declarations.

No deductible applies to this coverage.

## FULL SAFETY GLASS COVERAGE

We will pay under Comprehensive Coverage for the cost of repairing or replacing damaged **safety equipment** on **your covered auto** without a deductible. We will pay only if:

1. The Declarations indicates that Comprehensive Coverage applies; and

2. A specific premium charge for Full Safety Glass Coverage is shown in the Declarations for **your covered auto.**

**"Safety equipment",** as used in this coverage means the:

1. Glass used in the windshield, doors and windows of **your covered auto;** and

2. Glass, plastic or other material used in the lights of **your covered auto.**

**** REPRINTED FROM THE ARCHIVE.  THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS  ****

This policy has been signed by our President and Secretary.

James MacPhee
President

Mark C. Touhey
Vice President and Secretary

This policy includes copyrighted material of Insurance Services Office, Inc. with its permission.

SA-1701/EP 9/90
G19

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

## WHERE TO TURN FOR HELP

If we at Safeco Insurance Company of America, a member of the Liberty Mutual Group, fail to provide you with reasonable and adequate service, you should contact your agent or broker at the address or phone number shown on the Declarations page of this policy.

You may also contact us via the following methods:

In person:

Safeco Insurance Company of America
Central Region Underwriting
1600 N. Collins Blvd.
Richardson, TX 75080-3660

Via US mail:

Safeco Insurance Company of America
Central Region Underwriting
Safeco Imaging Center
PO BOX 515097
Los Angeles, CA 90051-5097

By phone: 1-800-332-3226

If you still have questions after contacting us, or your agent or broker, you may contact the Arkansas Insurance Department:

Arkansas Insurance Department
1200 West Third Street
Little Rock, AR 72201
(501) 371-2640 or 1-800-852-5494

P-1037/AREP 12/09

**** REPRINTED FROM THE ARCHIVE.  THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

# IMPORTANT NOTICE REGARDING YOUR AUTOMOBILE POLICY
## ARKANSAS AFTER-MARKET PARTS

In the repair of **your covered auto** under the Coverage for Damage to Your Auto provisions of this policy, we may require or specify the use of motor vehicle parts not made by the original manufacturer. These parts are required to be at least equal in terms of fit, quality, performance, and warranty to the original manufacturer parts they replace.

SA-2328/AREP 12/97

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

## ARSON REPORTING — IMMUNITY ACT NOTICE

If fire loss occurs, the insurance company is required by state law to furnish relevant information relating to the loss to any state or federal law enforcement or other agency which has responsibility for investigation of fires if:

— the agency requests the information; or
— after investigating the fire, the company has reason to believe it was not of accidental origin.

If the insurance company provides information to a fire investigation agency the insurance company will:

— notify the named insured of that action within 90 days; and
— send the named insured a copy of the report.

SA-1143/AREP 3/84
G1

ELECTRONICALLY FILED
Craighead County Circuit Court in Jonesboro
Candace Edwards, Craighead Circuit Clerk
2019-May-24  16:30:42

 **MARKET VALUATION REPORT**

*Prepared for SAFECO INSURANCE COMPANY OF ILLINOIS*

## 📝 REPORT SUMMARY

### 📇 CLAIM INFORMATION

| | |
|---|---|
| Owner | Kirby, Ashley |
| | 628 E Oak Ave Apt 12 |
| | Jonesboro, AR 72401 |
| Loss Vehicle | 2000 Buick Century Custom |
| Loss Incident Date | 02/17/2018 |
| Claim Reported | 02/19/2018 |

The CCC ONE® Market Valuation Report reflects CCC Information Services Inc.'s opinion as to the value of the loss vehicle, based on information provided to CCC by SAFECO INSURANCE COMPANY OF ILLINOIS.

Loss vehicle has 15% greater than average mileage of 176,000.

###  INSURANCE INFORMATION

| | |
|---|---|
| Report Reference Number | 87714254 |
| Claim Reference | 545719186039-202 |
| Adjuster | Wiedeman, Daka |
| Appraiser | Snapsheet, Inc |
| Odometer | 201,801 |
| Last Updated | 02/19/2018 11:44 AM |

### 🏷️ VALUATION SUMMARY

| | |
|---|---|
| **Base Vehicle Value** | **$ 1,674.00** |
| Condition Adjustment | - $ 131.00 |
| **Adjusted Vehicle Value** | **$ 1,543.00** |
| **Value before Deductible** | **$ 1,543.00** |
| Deductible | - $ 1,000.00 |
| **Total** | **$ 543.00** |

The total may not represent the total of the settlement as other factors (e.g. license and fees) may need to be taken into account.

**BASE VEHICLE VALUE**

This is derived per our Valuation methodology described on the next page.

**ADJUSTED VEHICLE VALUE**

This is determined by adjusting the Base Vehicle Value to account for the actual condition of the loss vehicle and certain other reported attributes, if any, such as refurbishments and after factory equipment.

### Inside the Report

Valuation Methodology ........................... 2
Vehicle Information ................................ 3
Vehicle Condition .................................. 6
Comparable Vehicles .............................. 7
Valuation Notes .................................... 10
Supplemental Information ...................... 11



EXHIBIT
B

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC≋ONE. MARKET VALUATION REPORT

Owner: Kirby, Ashley
Claim: 545719186039-202

# VALUATION METHODOLOGY

### How was the valuation determined?



### CLAIM INSPECTION

SAFECO INSURANCE COMPANY OF ILLINOIS has provided CCC with the zip code where the loss vehicle is garaged, loss vehicle VIN, mileage, equipment, as well as loss vehicle condition, which is used to assist in determining the value of the loss vehicle.



### DATABASE REVIEW

CCC maintains an extensive database of vehicles that currently are or recently were available for sale in the U.S. This database includes vehicles that CCC employees have physically inspected, as well as vehicles advertised for sale by dealerships or private parties. All of these sources are updated regularly.

### SEARCH FOR COMPARABLES

When a valuation is created the database is searched and comparable vehicles in the area are selected. The zip code where the loss vehicle is garaged determines the starting point for the search. Comparable vehicles are similar to the loss vehicle based on relevant factors.



### CALCULATE BASE VEHICLE VALUE

Adjustments to the price of the selected comparable vehicles are made to reflect differences in vehicle attributes, including mileage and options. Dollar adjustments are based upon market research.

Finally, the Base Vehicle Value is the weighted average of the adjusted values of the comparable vehicles based on the following factors:

- Source of the data (such as inspected versus advertised)
- Similarity (such as equipment, mileage, and year)
- Proximity to the loss vehicle's primary garage location
- Recency of information



© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC ONE. MARKET VALUATION REPORT

# 🚗 VEHICLE INFORMATION

## VEHICLE DETAILS

| | |
|---|---|
| Location | JONESBORO, AR 72401 |
| VIN | 2G4WS52JXY1255015 |
| Year | 2000 |
| Make | Buick |
| Model | Century |
| Trim | Custom |
| Body Type | Sedan |
| Engine - | |
|    Cylinders | 6 |
|    Displacement | 3.1L |
|    Fuel Type | Gasoline |
|    Carburation | SFI |
| Transmission | Automatic Transmission Overdrive |
| Curb Weight | 3340 lbs |

Vehicles sold in the United States are required to have a manufacturer assigned Vehicle Identification Number (VIN). This number provides certain specifications of the vehicle.

Please review the information in the Vehicle Information Section to confirm the reported mileage and to verify that the information accurately reflects the options, additional equipment or other aspects of the loss vehicle that may impact the value.

## VEHICLE ALLOWANCES

| | | |
|---|---|---|
| Odometer | 201,801 | - 330 |
| **Options** | | |
| Cruise Control | Not Present | - 19 |
| Cassette | Reported | + 19 |
| Premium Radio | Reported | + 29 |

Reported* Option(s) added after initial valuation

Allowances are factors influencing the value of the loss vehicle when compared to a typical vehicle. The typical vehicle is a vehicle of the same year, make, and model as the loss vehicle, including average mileage, and all standard and predominant equipment. These allowances are displayed for illustrative purposes only.

The Base Vehicle Value is calculated from the comparable vehicles with adjustments to reflect the loss vehicle configuration

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC▧ONE. MARKET VALUATION REPORT

Owner: Kirby, Ashley
Claim: 545719186039-202

#  VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| | | | |
|---|---|---|---|
| Odometer | 201,801 | | |
| Transmission | Automatic Transmission | ✔ | |
| | Overdrive | ✔ | |
| Power | Power Steering | ✔ | |
| | Power Brakes | ✔ | |
| | Power Windows | ✔ | |
| | Power Locks | ✔ | |
| | Power Mirrors | ✔ | |
| | Power Driver Seat | ✔ | |
| | Power Trunk/Gate Release | ✔ | |
| Decor/Convenience | Air Conditioning | ✔ | |
| | Climate Control | ✔ | |
| | Tilt Wheel | ✔ | |
| | Rear Defogger | ✔ | |
| | Intermittent Wipers | ✔ | |
| | Memory Package | ✔ | |
| | Keyless Entry | ✔ | |
| Seating | Cloth Seats | ✔ | |
| | Reclining/Lounge Seats | ✔ | |
| Radio | AM Radio | ✔ | |
| | FM Radio | ✔ | |
| | Stereo | ✔ | |
| | Search/Seek | ✔ | |
| | Cassette | 🗎 | |
| | Premium Radio | 🗎 | |
| Wheels | Wheel Covers | ✔ | |
| Safety/Brakes | Air Bag (Driver Only) | ✔ | |
| | Passenger Air Bag | ✔ | |
| | Anti-lock Brakes (4) | ✔ | |
| | Traction Control | ✔ | |
| Exterior/Paint/Glass | Dual Mirrors | ✔ | |
| | Body Side Moldings | ✔ | |

To the left is the equipment of the loss vehicle that SAFECO INSURANCE COMPANY OF ILLINOIS provided to CCC.

✔ **Standard** This equipment is included in the base configuration of the vehicle at time of purchase.

🗎 **Additional** Equipment that is not Standard but was noted to be on the loss vehicle.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **MARKET VALUATION REPORT**

# 🚌 VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| | |
|---|---|
| Tinted Glass | ✔ |
| Clearcoat Paint | ▣ |
| Metallic Paint | ▣ |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC🐻ONE. MARKET VALUATION REPORT

Owner: Kirby, Ashley
Claim: 545719186039-202

 VEHICLE CONDITION

## COMPONENT CONDITION

| | Condition | Inspection Notes | Value Impact |
|---|---|---|---|
| **INTERIOR** | | | |
| Seats | NORMAL WEAR | dis-coloration and light soiling | $ 0 |
| Carpets | NORMAL WEAR | some staining and soiling | $ 0 |
| Dashboard | MAJOR WEAR | missing portion on rt side and radio knobs. Heavy damage to steering wheel | - $ 37 |
| Headliner | NORMAL WEAR | Unable to see | $ 0 |
| **EXTERIOR** | | | |
| Sheet Metal | MAJOR WEAR | rocker rusted through. | - $ 67 |
| Trim | NORMAL WEAR | chrome peeling on rear bumper. some trim faded | $ 0 |
| Paint | NORMAL WEAR | chips on edge of door. rear bumper shade off | $ 0 |
| Glass | MAJOR WEAR | w/s cracked accross entire bottom | - $ 27 |
| **MECHANICAL** | | | |
| Engine | NORMAL WEAR | Unable to see | $ 0 |
| Transmission | NORMAL WEAR | Unable to see | $ 0 |
| **TIRES** | | | |
| Front Tires | NORMAL WEAR | TYPICAL WEAR | $ 0 |
| Rear Tires | NORMAL WEAR | TYPICAL WEAR | $ 0 |

**Total Condition Adjustments** -$131

SAFECO INSURANCE COMPANY OF ILLINOIS uses condition inspection guidelines to determine the condition of key components of the loss vehicle prior to the loss. The guidelines describe physical characteristics for these key components, for the condition selected based upon age. Inspection Notes reflect observations from the appraiser regarding the loss vehicle's condition.

CCC makes dollar adjustments that reflect the impact the reported condition has on the value of the loss vehicle as compared to Normal Wear condition. These dollar adjustments are based upon interviews with dealerships across the United States.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC≋ONE. MARKET VALUATION REPORT

Owner: Kirby, Ashley
Claim: 545719186039-202

 COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 | Comp 3 |
|---|---|---|---|---|
| Odometer | 201,801 | 183,325 | 197,503 | 125,842 |
| Automatic Transmission | ✔ | ✔ | ✔ | ✔ |
| Overdrive | ✔ | ✔ | ✔ | ✔ |
| Power Steering | ✔ | ✔ | ✔ | ✔ |
| Power Brakes | ✔ | ✔ | ✔ | ✔ |
| Power Windows | ✔ | ✔ | ✔ | ✔ |
| Power Locks | ✔ | ✔ | ✔ | ✔ |
| Power Mirrors | ✔ | ✔ | ✔ | ✔ |
| Power Driver Seat | ✔ | ✔ | ✔ | ✔ |
| Power Trunk/Gate Release | ✔ | ✔ | ✔ | ✔ |
| Air Conditioning | ✔ | ✔ | ✔ | ✔ |
| Climate Control | ✔ | ✔ | ✔ | ✔ |
| Tilt Wheel | ✔ | ✔ | ✔ | ✔ |
| Cruise Control | ✘ | ✔ | ✔ | ✔ |
| Rear Defogger | ✔ | ✔ | ✔ | ✔ |
| Intermittent Wipers | ✔ | ✔ | ✔ | ✔ |
| Memory Package | ✔ | ✔ | ✔ | ✔ |
| Keyless Entry | ✔ | ✔ | ✔ | ✔ |
| Cloth Seats | ✔ | ✔ | ✔ | ✔ |
| Reclining/Lounge Seats | ✔ | ✔ | ✔ | ✔ |
| AM Radio | ✔ | ✔ | ✔ | ✔ |
| FM Radio | ✔ | ✔ | ✔ | ✔ |
| Stereo | ✔ | ✔ | ✔ | ✔ |
| Search/Seek | ✔ | ✔ | ✔ | ✔ |
| CD Player | ✘ | ✘ | ✘ | ✔ |
| Cassette | ✔ | ✔ | ✔ | ✔ |
| Steering Wheel Touch Controls | ✘ | ✘ | ✘ | ✔ |
| Premium Radio | ✔ | ✘ | ✘ | ✘ |
| Wheel Covers | ✔ | ✔ | ✔ | ✘ |
| Aluminum/Alloy Wheels | ✘ | ✘ | ✘ | ✔ |
| Drivers Side Air Bag | ✔ | ✔ | ✔ | ✔ |
| Passenger Air Bag | ✔ | ✔ | ✔ | ✔ |
| Anti-lock Brakes (4) | ✔ | ✔ | ✔ | ✔ |
| Traction Control | ✔ | ✔ | ✔ | ✔ |
| Dual Mirrors | ✔ | ✔ | ✔ | ✔ |
| Heated Mirrors | ✘ | ✔ | ✔ | ✔ |
| Body Side Moldings | ✔ | ✔ | ✔ | ✔ |
| Tinted Glass | ✔ | ✔ | ✔ | ✔ |
| Clearcoat Paint | ✔ | ✘ | ✘ | ✘ |
| Metallic Paint | ✔ | ✘ | ✘ | ✘ |

Comp 1      Updated Date: 11/29/2017
2000 Buick Century Custom 6 3.1l
Gasoline Sfi
VIN 2G4WS52J1Y1334329
Dealership Volkswagen Of Lee's Summit
Telephone (816) 600-4224
Source Truecar
Stock # 14123B
Distance from Jonesboro, AR
295 Miles - Lees Summit, MO

Comp 2      Updated Date: 01/31/2018
2000 Buick Century Custom 6 3.1l
Gasoline Sfi
VIN 2G4WS52J9Y1342064
Dealership Bill Gatton Chevrolet-cadillac
Telephone (423) 764-5121
Source Truecar
Stock # 42064P
Distance from Jonesboro, AR
476 Miles – Bristol, TN

Comp 3      Updated Date: 11/21/2017
2000 Buick Century Custom 6 3.1l
Gasoline Sfi
VIN 2G4WS52J1Y1338641
Dealership Toyota Of Des Moines
Telephone (515) 333-5167
Source Truecar
Stock # H44381B
Distance from Jonesboro, AR
436 Miles - Grimes, IA

Comparable vehicles used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, and may no longer be available for sale.

List Price is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle.

Distance is based upon a straight line between loss and comparable vehicle locations.

The Condition Adjustment sets that comparable vehicle to Normal Wear condition, which the loss vehicle was also

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

**CCC≋ONE.** **MARKET VALUATION REPORT**

Owner: Kirby, Ashley
Claim: 545719186039-202

 COMPARABLE VEHICLES

compared to in the Vehicle Condition
section.

| List Price | $ 2,636 | $ 2,332 | $ 2,999 |
|---|---|---|---|
| **Adjustments:** | | | |
| Options | + $ 6 | + $ 6 | - $ 80 |
| Mileage | - $ 213 | - $ 41 | - $ 1,022 |
| Condition¹ | - $ 463 | - $ 463 | - $ 463 |
| **Adjusted Comparable Value** | **$ 1,966** | **$ 1,834** | **$ 1,434** |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC⊠ONE. MARKET VALUATION REPORT

Owner: Kirby, Ashley
Claim: 545719186039-202

 COMPARABLE VEHICLES

## ADDITIONAL COMPARABLE VEHICLES

| Source | Vehicle | Price | Adjusted Comparable Value |
|---|---|---|---|
| **Comp 4** | | | |
| Source: Autotrader | **2001 Buick Century Limited** | $ 2,950 | $ 1,281 |
| Courtney's Used Trucks | **6 3.1l Gasoline Sfi** | (List) | |
| Mc Louth, KS | Odometer: 144,000 | | |
| (913) 796-6198 | VIN: 2G4WY55J111112664 | | |
| 339 Miles From Jonesboro, AR | Updated Date: 12/11/2017 | | |
| **Comp 5** | | | |
| Source: Autotrader | **2001 Buick Century** | $ 2,990 | $ 1,491 |
| Your Choice Auto Sales | **Custom 6 3.1l Gasoline Sfi** | (List) | |
| Markham, IL | Odometer: 137,314 | | |
| (708) 769-7305 | VIN: 2G4WS52JX11289249 | | |
| 428 Miles From Jonesboro, AR | Stock #: EYC-289249 | | |
| | Updated Date: 01/31/2018 | | |
| **Comp 6** | | | |
| Source: Dealer Ad | **2001 Buick Century Limited** | $ 2,995 | $ 1,332 |
| Cactus Jacks Auto | **6 3.1l Gasoline Sfi** | (List) | |
| Midlothian, IL | Odometer: 147,196 | | |
| (480) 615-7777 | VIN: 2G4WY55J611146678 | | |
| 430 Miles From Jonesboro, AR | Stock #: 944 | | |
| | Updated Date: 02/09/2018 | | |
| **Comp 7** | | | |
| Source: Truecar | **2001 Buick Century** | $ 3,995 | $ 2,330 |
| Classic Chevrolet - Southeast | **Custom 6 3.1l Gasoline Sfi** | (List) | |
| Texas | Odometer: 117,959 | | |
| Beaumont, TX | VIN: 2G4WS52J511231209 | | |
| (409) 924-3400 | Stock #: TU231209 | | |
| 445 Miles From Jonesboro, AR | Updated Date: 12/14/2017 | | |

Additional Comparable Vehicles are in summary format, but are adjusted the same as those on the previous page.

Comparable vehicles used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, and may no longer be available for sale.

**List Price** is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle.

**Distance** is based upon a straight line between loss and comparable vehicle locations.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **MARKET VALUATION REPORT**

# 📝 VALUATION NOTES

This Market Valuation Report has been prepared exclusively for use by SAFECO INSURANCE COMPANY OF ILLINOIS, and no other person or entity is entitled to or should rely upon this Market Valuation Report and/or any of its contents. CCC is one source of vehicle valuations, and there are other valuation sources available.

Regulations concerning vehicle value include Arkansas Insurance Department Rule 43.

America First Insurance, Colorado Casualty, Golden Eagle Insurance, Indiana Insurance, Liberty Agency Underwriters, Liberty Northwest, Montgomery Insurance, Ohio Casualty, Peerless Insurance and Safeco Insurance are part of Liberty Mutual Agency Markets, a business unit of Liberty Mutual Group.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC≋ONE  MARKET VALUATION REPORT

Owner: Kirby, Ashley
Claim: 545719186039-202

# SUPPLEMENTAL INFORMATION

 **EXPERIAN® AUTOCHECK® VEHICLE HISTORY REPORT**

CCC provides SAFECO INSURANCE COMPANY OF ILLINOIS information reported by Experian regarding the 2000 Buick Century (2G4WS52JXY1255015). This data is provided for informational purposes. Unless otherwise noted in this Valuation Detail, CCC does not adjust the value of the loss vehicle based upon this information.

**LEGEND :**

✔ No Event Found
⊝ Event Found
🄐 Information Needed

| TITLE CHECK | | RESULTS FOUND |
|---|---|---|
| Abandoned | ⊝ | Abandoned Record Found |
| Damaged | ✔ | No Damaged Record Found |
| Fire Damage | ✔ | No Fire Damage Record Found |
| Grey Market | ✔ | No Grey Market Record Found |
| Hail Damage | ✔ | No Hail Damage Record Found |
| Insurance Loss | ✔ | No Insurance Loss Record Found |
| Junk | ✔ | No Junk Record Found |
| Rebuilt | ⊝ | Rebuilt Record Found |
| Salvage | ⊝ | Salvage Record Found |

**TITLE CHECK**

EVENT FOUND

AutoCheck's database for this loss vehicle found historical events that might indicate a significant automotive problem. These problems can indicate past automotive damage or warnings associated with the vehicle title.

| EVENT CHECK | | RESULTS FOUND |
|---|---|---|
| NHTSA Crash Test Vehicle | ✔ | No NHTSA Crash Test Vehicle Record Found |
| Frame Damage | ✔ | No Frame Damage Record Found |
| Major Damage Incident | ✔ | No Major Damage Incident Record Found |
| Manufacturer Buyback/Lemon | ✔ | No Manufacturer Buyback/Lemon Record Found |
| Odometer Problem | ✔ | No Odometer Problem Record Found |
| Recycled | ✔ | No Recycled Record Found |
| Water Damage | ✔ | No Water Damage Record Found |
| Salvage Auction | ⊝ | Salvage Auction Record Found |

**EVENT CHECK**

EVENT FOUND

AutoCheck's database for this loss vehicle found historical events that might indicate a significant automotive problem. These problems can indicate past automotive damage or warnings associated with the vehicle title.

| VEHICLE INFORMATION | | RESULTS FOUND |
|---|---|---|
| Accident | ✔ | No Accident Record Found |
| Corrected Title | ✔ | No Corrected Title Record Found |
| Driver Education | ✔ | No Driver Education Record Found |
| Fire Damage Incident | ✔ | No Fire Damage Incident Record Found |
| Lease | ✔ | No Lease Record Found |
| Lien | ✔ | No Lien Record Found |
| Livery Use | ✔ | No Livery Use Record Found |
| Government Use | ✔ | No Government Use Record Found |
| Police Use | ✔ | No Police Use Record Found |
| Fleet | ✔ | No Fleet Record Found |
| Rental | ✔ | No Rental Record Found |
| Fleet and/or Rental | ✔ | No Fleet and/or Rental Record Found |
| Repossessed | ✔ | No Repossessed Record Found |
| Taxi use | ✔ | No Taxi use Record Found |
| Theft | ✔ | No Theft Record Found |
| Fleet and/or Lease | ✔ | No Fleet and/or Lease Record Found |
| Emissions Safety Inspection | ✔ | No Emissions Safety Inspection Record Found |
| Duplicate Title | ✔ | No Duplicate Title Record Found |

**VEHICLE INFORMATION**

THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no vehicle information that indicate a significant automotive problem. These problems can indicate past previous car damage, theft, or other significant problems.

**ODOMETER CHECK**

THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no indication of odometer rollback or tampering was found. AutoCheck determines odometer rollbacks by searching for records that indicate odometer readings less than a previously reported value. Other odometer events can report events of tampering, or possible odometer breakage.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC⊠ONE. MARKET VALUATION REPORT

Owner: Kirby, Ashley
Claim: 545719186039-202

# SUPPLEMENTAL INFORMATION

 **FULL HISTORY REPORT RUN DATE: 02/19/2018**

Below are the historical events for this vehicle listed in chronological order:

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 04/14/2000 | O FALLON, MO | 10 | Motor Vehicle Dept. | TITLE |
| 05/02/2001 | O FALLON, MO | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 02/16/2002 | O FALLON, MO | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 02/19/2004 | O FALLON, MO | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 03/03/2006 | O FALLON, MO | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 02/27/2008 | O FALLON, MO | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 02/04/2010 | O FALLON, MO | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 02/01/2012 | O FALLON, MO | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 04/09/2015 | BRIDGETON, MO | | Motor Vehicle Dept. | TITLE |
| 04/09/2015 | BRIDGETON, MO | | Motor Vehicle Dept. | SALVAGE |
| 04/09/2015 | BRIDGETON, MO | | Motor Vehicle Dept. | ABANDONED |
| 04/09/2015 | BRIDGETON, MO | | Motor Vehicle Dept. | VEHICLE TITLED/ REGISTERED TO AN INSURANCE COMPANY |
| 04/09/2015 | BRIDGETON, MO | | Motor Vehicle Dept. | EXCLUDED/EXEMPT |
| 04/17/2015 | MO | | Auto Auction | AUCTION ANNOUNCED AS SALVAGE, EXTENT OF DAMAGE UNKNOWN |
| 05/13/2015 | JONESBORO, AR | | Motor Vehicle Dept. | TITLE |
| 05/13/2015 | JONESBORO, AR | | Motor Vehicle Dept. | REBUILT/REBUILDABLE |
| 05/13/2015 | JONESBORO, AR | | Motor Vehicle Dept. | EXCLUDED/EXEMPT |
| 05/22/2015 | JONESBORO, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 05/22/2015 | JONESBORO, AR | | Motor Vehicle Dept. | EXCLUDED/EXEMPT |
| 06/05/2015 | JONESBORO, AR | | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 06/05/2015 | JONESBORO, AR | | Motor Vehicle Dept. | REBUILT/REBUILDABLE |
| 06/05/2015 | JONESBORO, AR | | Motor Vehicle Dept. | EXCLUDED/EXEMPT |
| 06/02/2016 | JONESBORO, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 06/02/2016 | JONESBORO, AR | | Motor Vehicle Dept. | REBUILT/REBUILDABLE |
| 06/02/2016 | JONESBORO, AR | | Motor Vehicle Dept. | EXCLUDED/EXEMPT |
| 05/31/2017 | JONESBORO, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC⊠ONE. MARKET VALUATION REPORT

Owner: Kirby, Ashley
Claim: 545719186039-202

## SUPPLEMENTAL INFORMATION

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 05/31/2017 | JONESBORO, AR | | Motor Vehicle Dept. | REBUILT/REBUILDABLE |
| 05/31/2017 | JONESBORO, AR | | Motor Vehicle Dept. | EXCLUDED/EXEMPT |

### AUTOCHECK TERMS AND CONDITIONS:

Experian's Reports are compiled from multiple sources. It is not always possible for Experian to obtain complete discrepancy information on all vehicles; therefore, there may be other title brands, odometer readings or discrepancies that apply to a vehicle that are not reflected on that vehicle's Report. Experian searches data from additional sources where possible, but all discrepancies may not be reflected on the Report.

These Reports are based on information supplied to Experian by external sources believed to be reliable, BUT NO RESPONSIBILITY IS ASSUMED BY EXPERIAN OR ITS AGENTS FOR ERRORS, INACCURACIES OR OMISSIONS. THE REPORTS ARE PROVIDED STRICTLY ON AN "AS IS WHERE IS" BASIS, AND EXPERIAN FURTHER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE REGARDING THIS REPORT.

YOU AGREE TO INDEMNIFY EXPERIAN FOR ANY CLAIMS OR LOSSES, INCLUDING COSTS, EXPENSES AND ATTORNEYS FEES, INCURRED BY EXPERIAN ARISING DIRECTLY OR INDIRECTLY FROM YOUR IMPROPER OR UNAUTHORIZED USE OF AUTOCHECK VEHICLE HISTORY REPORTS.

Experian shall not be liable for any delay or failure to provide an accurate report if and to the extent which such delay or failure is caused by events beyond the reasonable control of Experian, including, without limitation, "acts of God", terrorism, or public enemies, labor disputes, equipment malfunctions, material or component shortages, supplier failures, embargoes, rationing, acts of local, state or national governments, or public agencies, utility or communication failures or delays, fire, earthquakes, flood, epidemics, riots and strikes.

These terms and the relationship between you and Experian shall be governed by the laws of the State of Illinois (USA) without regard to its conflict of law provisions. You and Experian agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Cook, Illinois.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC⑤ONE. MARKET VALUATION REPORT

# SUPPLEMENTAL INFORMATION

Owner: Kirby, Ashley
Claim: 545719186039-202

 **NHTSA VEHICLE RECALL**

The National Highway Traffic Safety Administration has issued 3 safety related recall notices that may apply to the above valued vehicle.

**NHTSA Campaign ID :** 00V140

**Potential Number Of Units Affected :** 18754

**Summary :** On certain passenger vehicles equipped with rear drum brakes, the bolt heads on the rear spindle rod can separate. The affected rear wheel can shift, causing loss of vehicle control.

**Remedy :** Dealers will replace the rear spindle bolts. The manufacturer has reported that owner notification will begin during July 2000. Owners who do not receive the free remedy within a reasonable time should contact Buick at 1-800- 521-7300.

**Dates Of Manufacture :** November 1999 - February 2000

**Models Involved :** Century, Regal, Lumina

**Manufacturer Recall No. :** 00047

---

**NHTSA Campaign ID :** 00V160

**Potential Number Of Units Affected :** 248

**Summary :** Certain passenger vehicles fail to comply with FMVSS No. 301, "Fuel System Integrity." The clamp that secures the flexible fuel fill hose to the metal fill tube may be loose and could separate, causing fuel leakage. A fuel leak in the presence of an ignition source increases the likelihood of fire.

**Remedy :** Dealers will inspect the fuel hose fill neck clamp and, if necessary, reposition and tighten the clamp. The manufacturer has reported that owner notification began June 28, 2000. Owners who do not receive the free remedy within a reasonable time should contact Buick at 1-800-521-7300.

**Dates Of Manufacture :** May 2000

**Manufacturer Recall No. :** 00056

---

**NHTSA Campaign ID :** 00V228003

**Potential Number Of Units Affected :** 156305

**Summary :** Certain passenger vehicles, light duty pickup trucks, sport utility vehicles, and mini vans equipped with TRW seat belt buckle assemblies fail to conform to the requirements of Federal Motor Vehicle Safety Standard No. 209, "Seat Belt Assemblies." The buckle base of these seat belt assemblies were not properly heat treated and do not pass the load bearing requirement of the standard. In the event of a vehicle crash, the occupant may not be properly restrained.

**Remedy :** Dealers will inspect the vehicle's rear safety belt buckle assembly date codes and, if necessary, will replace any rear safety belt buckle assembly. The manufacturer has reported that owner notification was to begin during September 2000. Owners who do not receive the free remedy within a reasonable time should contact Buick at 1-800-521-7300; Chevrolet at 1-800-222-1020; GMC at 1-800-462- 782, Oldsmobile at 1-800-442-6537; Pontiac at 1-800-762-2737; or Saturn at 1-800-553-6000.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC⯈ONE. MARKET VALUATION REPORT

Owner: Kirby, Ashley
Claim: 545719186039-202

## SUPPLEMENTAL INFORMATION

**Dates Of Manufacture :** April - May 2000

**Models Involved :** Century, Regal, Lumina, Impala, Monte Carlo, Venture, Blazer, S10/T10, Jimmy, Intrigue, Silhouette, Grand Prix, Montana, Saturn L-Series

**Manufacturer Recall No. :** 00067

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.